436 P.2d 142

**The STATE of Arizona, Appellee,**

v.

**Dennis E. REYNOLDS, Appellant.**

**No. 2 CA–CR 93.**

Court of Appeals of Arizona.

Jan. 17, 1968.

Rehearing Denied Feb. 27, 1968.

Darrell F. Smith, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Maxwell R. Palmer, Jr., Tucson, for appellant.

Hathaway, Chief Judge.

The defendant, Dennis E. Reynolds, in a trial to the court sitting without a jury was convicted of aggravated assault upon the body of a minor child. The defendant appeals therefrom.

Viewing the evidence in the light most favorable to support the conviction, the facts are as follows. At the defendant's preliminary hearing a record of the testimony of all witnesses including one Bonnie Doty was made at the direction of the justice of the peace by means of a Gray Audograph recording disc machine. The defendant was bound over to the superior court for trial.

Bonnie Doty, a State's witness at the preliminary hearing, was unavailable at the time of the trial through no fault of the State. At the trial a transcript of her testimony at the preliminary hearing was admitted in evidence along with certain out of court statements made by the defendant. The defendant objected to both of the admissions.

At the conclusion of the trial the court took the matter under advisement for 24 hours and returned a verdict of guilty.

On appeal, the defendant presents three questions for this court's consideration:

1. Whether the admission of the transcript of the testimony of Bonnie

Doty given at the preliminary hearing was in violation of the defendant's Sixth Amendment right to confrontation of the witnesses against him?

2. Whether the transcript of the preliminary hearing was so improperly taken as to be inadmissible?

3. Whether the defendant's out of court statements were admissible?

■ In Pointer v. State of Texas, 380 U. S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) the United States Supreme Court held the confrontation clause of the Sixth Amendment to be applicable to the states. In Douglas v. State of Alabama, 380 U.S. 415, at pages 418 and 419, 85 S.Ct. 1074, at page 1076, 13 L.Ed.2d 934 (1965), a case decided the same day as *Pointer,* the court said:

"We decide today that the Confrontation Clause of the Sixth Amendment is applicable to the States. [citing *Pointer*] Our cases construing the clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation."

In *Pointer,* the court stated:

"As has been pointed out, a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him. [citing authority]" 380 U.S. 406, 407, 85 S.Ct. 1069.

The Supreme Court then affirmed in dictum a fact situation exactly as is presented in the instant case:

"The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." 380 U.S. 407, 85 S.Ct. 1069.

■ The Sixth Amendment requirements as set out in Douglas v. State of Alabama,

supra, and Pointer v. State of Texas, supra, were met since the defendant, at the preliminary hearing, was represented by counsel, confronted Bonnie Doty and had full opportunity to and did cross-examine her.

■ The Arizona Supreme Court ruled on this very point in State v. Head, 91 Ariz. 246, 371 P.2d 599 (1962). This case was decided before *Pointer* but the court's ruling certainly applies to the Sixth Amendment of the United States Constitution now, as it does to Art. 2, § 24 of the Arizona Constitution, A.R.S. The court said at page 249, 371 P.2d at page 601:

" * * * the constitutional right of an accused to confront witnesses against him is not abridged where the accused at any stage of the proceedings, upon the same accusation, has once been confronted by the witnesses against him, and afforded an opportunity to cross-examine. * * *

" 'The rule has been settled now in practically every jurisdiction that the reproduction of testimony taken * * * *in the presence of accused at a preliminary hearing,* when the presence of the witness cannot be secured, does not contravene the constitutional right of an accused to confront the witnesses against him, in whatever language such right has been given.' "

Rule 30, Rules of Criminal Procedure, 17 A.R.S., states:

"B. When a witness has been examined as provided in Rule 23 and his testimony taken as provided in Rule 28, such testimony may be admitted in evidence upon the trial of the defendant for the offense for which he is held, either on behalf of the state or the defendant, if for any reason the testimony of the witness cannot be obtained at the trial and the court is satisfied that the inability to procure such testimony is not due to the fault of the party offering it."

The facts in the instant case are in accord with the above cited authority and Rule 30. We hold that the transcript of testimony of

Bonnie Doty from the preliminary hearing was admissible in the trial against the defendant.

█ Included within this first question presented by the defendant, he further claims that he was improperly restrained in his cross-examination of Bonnie Doty at the preliminary hearing from questioning her about the defendant's attitude toward the victim of the assault and Bonnie Doty's three other children. The error of the defendant's contention can be plainly seen from the following testimony of Bonnie Doty at the preliminary hearing:

"Q And how did he treat the other three children? [Here the State objected to this question but the court overruled the objection and allowed the witness to answer as follows.]

A He disciplined them like a normal father would do.

Q But you did—and you said Dennis [defendant] took the girl to the hospital that night?

A Yes, he did.

Q Did he show any concern over the child when he took it to the hospital?

A Yes."

█ The only question to which an objection by the State was sustained was: "Was he worried about its condition?" This question was not only a reiteration of the above quoted testimony but clearly called for a conclusion of the witness. Upon the sustaining of the objection to this question counsel for the defendant presented no argument to the court that he should be allowed to go into the defendant's attitude toward the victim. We find that not only was the objection correctly sustained but that the court did allow the defendant to cross-examine Bonnie Doty as to the defendant's attitude towards not only the victim but her other three children as well.

The defendant next raises the question whether a transcript of a preliminary hearing is admissible if not taken by a regularly appointed court reporter. In the instant case the transcript of the defendant's preliminary hearing was taken by means of a Gray Audograph recording disc machine and was therefrom transcribed into type, certified by Nella F. Bray, a notary public, as a true and correct transcript of the defendant's preliminary hearing and was filed with the clerk of the superior court on October 13, 1966. The defendant argues that if the proceedings are not reduced to writing by a regularly appointed court reporter then the transcript is improper and inadmissible.

█ It should be noted that the defendant made no request for a regularly appointed court reporter. However, this is of no moment to the disposition of this question since a cursory reading of Rules 25 and 28, Rules of Criminal Procedure, 17 A.R.S., answers the defendant's contention. The pertinent part of these rules read:

"Rule 25. The statement of the defendant shall either be reduced to writing by the magistrate or under his direction, or be taken by a regularly appointed court reporter and transcribed."

"Rule 28. The testimony of the witnesses and of the defendant, if defendant testified, shall, upon request of the defendant or the county attorney, either be reduced to writing by the magistrate or under his direction, or be taken by a regularly appointed court reporter and when transcribed shall be certified by the reporter as correct."

The recording of the testimony by the magistrate can be satisfied in one of three ways under both the rules:

1. The magistrate can himself reduce the testimony to writing; or

2. The testimony can be reduced to writing under his direction; or,

3. The testimony can be reduced to writing by a regularly appointed court reporter.

In the instant case the magistrate chose to have the testimony reduced to writing by a notary public "under his direction."

The defendant next contends that certain statements made by him to sheriff detective Bernal were wrongfully admitted in evidence under the rules laid down in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A short summary of the facts and the testimony of the defendant admitted in evidence is here necessary. Shelley Doty, the six-month old girl victim of the assault, was admitted to Tucson General Hospital on April 5, 1966 with fractures of the skull and right leg. On April 7 a report was made to the sheriff's office by Dr. Lock, Shelley Doty's attending physician, that Shelley had been taken from the hospital without his permission or consent. The sheriff's office dispatched detective Bernal to investigate the whereabouts of the injured child.

Detective Bernal first made contact with the defendant on April 7, 1966 at about 7 o'clock in the evening. Mrs. Bonnie Doty was with the defendant at this time. Detective Bernal then had a short conversation with the defendant inside the house in the presence of another detective, the defendant and Mrs. Doty who had invited them into the house. It was stipulated by counsel that the Miranda warnings were not given to the defendant prior to this conversation. Bernal testified unequivocally that, at the time, he was not investigating a crime, that there was no suspicion of crime, that the defendant was not under any suspicion of having committed a crime, and that the sole purpose for the conversation with the defendant was to discover the whereabouts of Shelley Doty, a severely injured child. The detectives did not take the defendant into custody, made no arrests and after the conversation left the defendant to go his own way. Detective Bernal testified as to the conversation between himself and the defendant as follows:

"The defendant told us that the child had left about 6:30 p. m. that date with his father to California, as his father had come to Tucson to take the children back as the defendant's mother was in critical condition; I believe it was leukemia, and that the defendant had stated that the doctor in California had advised him that his mother might die any day and that he was worried and that he decided to go back to where his mother was at."

The defendant objects to the admission of the above testimony contending that it proves the defendant to be untrustworthy in view of the fact that his father had not taken the child back to California but that the child later that evening was apprehended in the custody of the defendant, his father and Mrs. Doty.

The sole question presented on appeal regarding this conversation is whether the sheriff's action had reached the "custodial interrogation" stage and therefore subject to the rules as laid down in Miranda. The point at which police action reaches "custodial interrogation" is, of necessity, dependent upon the individual facts of each case. State v. Tellez, 6 Ariz.App. 251, 431 P.2d 691 (1967).

In the instant case the sheriff's office was not even investigating an alleged crime but rather was investigating the unexplained disappearance of a severely injured child from the hospital without the knowledge or consent of the attending physician. The learned trial judge, in discussing the defendant's objection, stated that the whereabouts of an injured child requiring hospitalization is of grave public importance.

Here, the sheriff's department did not deprive the defendant of his freedom in anyway and this court finds nothing in the record that would indicate the defendant to have been placed under custodial interrogation at the time of the conversation between detective Bernal and the defendant. State v. Intogna, 101 Ariz. 275, 419 P.2d 59 (1966) and State v. Tellez, supra.

Affirmed.

MOLLOY and KRUCKER, JJ., concur.