485 P.2d 556

**STATE of Arizona, Appellee,**

v.

**Pauline TOSATTO, Appellant.**

**No. 2180.**

Supreme Court of Arizona,
In Banc.

May 28, 1971.

Gary K. Nelson, Atty. Gen., by Carl
Waag, former Asst. Atty. Gen., and Jack
McCormick, Asst. Atty. Gen., Phoenix, for
appellee.

Ross P. Lee, Maricopa County Public
Defender by James H. Kemper, Deputy
Public Defender, Phoenix, for appellant.

UDALL, Justice:

Defendant, Pauline Tosatto, appeals
from her conviction on charges of false
imprisonment, simple battery and assault with a deadly weapon; for which she was
sentenced to serve not less than 9 years
nor more than 10 years, not less than 5
months nor more than 6 months and not
less than 25 years nor more than 30 years,
respectively. Sentences on all three counts
were ordered to run concurrently. For the
reasons advanced below defendant's con-
viction and imposition of sentence is af-
firmed.

Testimony elicited at trial reveals the
following sequence of events leading to de-
fendant's arrest and conviction: At about
2:00 A.M. on August 10, 1969, Mercedes
Carrle, in the company of one Myron Cole-
man, drove out to defendant's residence in
Carrle's automobile. Also present at de-
fendant's home when they arrived were
James Polo Phillips, Ewell G. Rhambo and
defendant. After an hour or so of con-
versing, Myron Coleman and James Phil-
lips decided to leave the group and drive
out to get something to eat. They were
gone for approximately a half hour, during
which time Coleman disclosed to Phillips
that he had reason to believe Mercedes
Carrle was a police informant. To sub-
stantiate his accusation Coleman retrieved
an electronic listening device from within
Carrle's car, which he was driving. They
then returned to defendant's residence
where Phillips related this information to
defendant. Upon learning of Carrle's role
as a police informer defendant produced a
.25 caliber automatic pistol and, after ac-
cusing Carrle of being a "snitch," proceed-
ed to beat and kick her. Phillips joined de-
fendant in beating Carrle for several more
minutes. Defendant then pointed the pistol
at her head and just before firing aimed the
pistol so that the bullet narrowly missed
striking her. Several more beatings fol-
lowed, resulting in Carrle's dentures being
knocked from her mouth and broken. Some
time later defendant called Odos Hatten
and asked him to hurry over because she
was in trouble. Shortly thereafter Odos
Hatten arrived at defendant's home carry-
ing a rifle. Upon hearing that Carrle was
an informer, Hatten allegedly struck Carrle

in the chin with the rifle butt. He stayed for only a short period of time and left.

Later that morning Carrle, bloodied from the beatings, was able to escape when Phillips, who was guarding her, turned to answer the telephone. She ran out of the house calling for help and a short distance down the street she ran into a house occupied by James Jeewik. Mr. Jeewik testified over defense counsel's objections that he had seen Carrle running down the street yelling for help. The police were called and informed as to what had occurred. Carrle was then rushed to a hospital for treatment of her injuries.

Police officers, armed with a search warrant, proceeded to defendant's house. Finding no one home, the premises were searched and a number of items, some of which were later admitted into evidence to corroborate Carrle's testimony, were seized. The officers then began their search for the named defendants. Shortly thereafter, defendant and Phillips were observed driving in defendant's car. They were ordered to pull over and were advised that they were being placed under arrest. One of the arresting officers testified that as defendant Tosatto was being taken from the car he saw Phillips lean over and reach beneath the dashboard. Phillips was forcibly extricated, searched and handcuffed. While both parties were still at the scene the area beneath the dashboard was searched and a .25 caliber pistol removed therefrom. This pistol, allegedly the same one which defendant fired at Carrle, was later admitted into evidence over defense counsel's objections. The police later arrested Odos Hatten and Myron Coleman.

Prior to trial James Phillips agreed to, and did, testify in the state's behalf in return for dismissal of charges filed against him. Charges filed against Myron Coleman were dismissed after lie detector test results indicated he did not participate in the beatings.

On appeal defendant has raised seven questions in her quest for reversal:

(I)  Is a Search of an Automobile Unreasonable Where it is Made at the Scene of Arrest Immediately After the Car's Occupants have been Arrested and Handcuffed?

■ Defendant contends that the seizure of the .25 caliber pistol from beneath the dashboard of her car was unlawful and the trial court erred in allowing the gun to be admitted into evidence. For evidence obtained as a result of a warrant-less search of an automobile to be admissible at an accused's trial such search must meet the test of "reasonableness" under the Fourth Amendment. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Generally, a search and seizure incident to a lawful arrest meets the Fourth Amendment's test of reasonableness, being justified by the need to seize weapons which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime where the weapon or evidence is on the arrested party's person or within his immediate control. Here, the search was conducted and seizure of the pistol made immediately after defendant and Phillips were removed from the automobile, placed under arrest and handcuffed. Clearly, this was a search incident to arrest. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the United States Supreme Court held that a warrant-less search is permissible *even though* the automobile's occupants have been arrested and removed from the scene of arrest and the automobile also has been removed to a location better suited for conducting a thorough search. Thus, a search of an automobile may be conducted by police without a warrant in any case where the police could initially have searched the automobile as incident to an arrest, probable cause to search for the specific items seized exists, and the search is conducted at the first reasonable opportunity presented after removal of the automobile from the scene of arrest.

Applying the facts in the case at bar to the holding in *Chambers,* clearly the search of the automobile and seizure of the weapon was lawful. The fact that defendant was known to be armed when coupled with Phillip's actions in reaching beneath the dashboard certainly gave the arresting officers probable cause to search the automobile for weapons. The search, having been conducted at the scene of arrest and in defendant's presence fell well within the rule laid down in *Chambers.* The pistol was seized pursuant to a valid search and seizure incident to arrest. It was, therefore, properly admitted into evidence.

(II)   Where a Search is made Pursuant to a Search Warrant may Items not Listed in the Warrant But Related to the Crime be Lawfully Seized and Later Admitted into Evidence?

■   While the items seized at defendant's place of residence were not listed on the search warrant, they did bear some relation to the crime in that they tended to prove and corroborate Mercedes Carrle's testimony that she had been beaten and fired upon. The items complained of were Carrle's broken dentures, pieces of broken teeth, her electronic listening device, her glasses, the expended .25 caliber shell and the slug, a bloodied towel, among others. Defendant does not challenge the validity of the search warrant. Pursuant to a valid search warrant, seizure may be made of items listed in the warrant as well as items not listed but related to the crime and bearing evidentiary value. One instance where seizure of "mere evidence", to be used in securing a conviction, is permissible is where a clear nexus exists between the items seized and the criminal behavior complained of. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The items complained of, being closely related to the crime, were lawfully seized and properly admitted into evidence.

(III)   Does Reference to a Polygraph Test, Administered to a Person not Presently Charged with the Offense and not Testifying at the Trial, Constitute Prejudicial Error Where the Trial Judge Subsequently Admonishes the Jury to Disregard Such Testimony?

■   During the course of examining one of the state's witnesses, the witness was asked whether he knew why charges against Myron Coleman had been dismissed. The witness began to say "Report from the polygraph operator—" when defense counsel quickly objected. No further testimony as to the polygraph test was given, and Coleman did not participate in the trial in any manner. On motion of the state, the trial judge ordered that all reference to the test be stricken and the jury was admonished to disregard this testimony. Reference to the polygraph test should not have been made; yet, we find no resulting prejudice in light of the court's instruction to the jury to disregard such testimony. State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (1962).

(IV)   May a Witness be Impeached by Showing that he has been Arrested?

■   The incident to which defendant refers is the county attorney's questioning of a defense witness as to whether he had ever been arrested before. The witness answered "yes" before defense counsel could object. He then went on to state that he was arrested some two or three years ago "for using vulgar language." No further objections followed. Generally a witness may not be impeached, either on cross-examination or otherwise, by a showing of specific acts of misconduct for which he has not received a felony conviction. State v. Reyes, 99 Ariz. 257, 408 P.2d 400 (1965); 3 Wigmore. Evidence 538, § 980 (3d ed. 1940). While the witness should have been asked whether he had ever been arrested and convicted on a felony charge and not merely whether he had ever been arrested, we fail to see how defendant was prejudiced thereby. Clearly, the error was harmless.

(V) Are Hearsay Examinations, made by a Person Fleeing her Captors, Admissible as "Spontaneous or Excited Utterances"?

 As one of the state's witnesses James Jeewik was called to testify as to whether he had observed anything unusual "on a Sunday last year in August." He testified that on the day in question he observed Mercedes Carrle running down the street and heard her calling "help, help, help. Somebody want[s] to kill me." This testimony was objected to and the objection overruled. Defendant now claims the trial judge erroneously allowed this "hearsay testimony" to be admitted into evidence. We cannot agree. Carrle's exclamations clearly fall within the hearsay exception of "spontaneous or excited utterances". See, State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952). Carrle's cries for help and her statement that someone was trying to kill her, upon escaping from defendant's home, were made under circumstances of physical shock (resulting from the beatings inflicted upon her) and were within a short enough period of time after the beatings as to preclude any likelihood of reflection or fabrication. Jeewik's testimony was properly admitted.

(VI) May a Defendant be Sentenced under A.R.S. § 13–249(B) when the Jury has Failed to Find that the Assault with a Deadly Weapon was Committed with a Gun?

 For a defendant to be sentenced under § 13–249(B), providing for an enhanced punishment where a gun is used in committing the assault, the jury need not make a finding that a gun was used in returning its verdict. See, State v. Felix, 107 Ariz. 211, 484 P.2d 631, filed May 13, 1971. All that is necessary is that the evidence presented clearly indicates that the assault was committed by means of a gun. Evidence introduced at defendant's trial established that she had pointed and fired her pistol so that the bullet narrowly missed striking the victim in the head. To constitute an assault with a deadly weapon, the person assaulted need not be wounded; nor need the gun even be fired if the totality of the surrounding facts and circumstances are sufficient to enable the jury to find the necessary mens rea to constitute the crime charged. State v. Duncan, 105 Ariz. 426, 466 P.2d 380 (1970).

Defendant's seventh contention, that the trial court improperly admitted hearsay testimony, is totally without merit. The testimony referred to was not hearsay, having been introduced for purposes other than to prove the truth of the matter asserted therein.

Judgment affirmed.

STRUCKMEYER, C. J., HAYS, V. C. J., and LOCKWOOD and CAMERON, JJ., concur.