485 P.2d 826

**STATE of Arizona, Appellee,**

v.

**William SEELEN, Appellant.**

**No. 1994.**

Supreme Court of Arizona, In Division.

June 7, 1971.

Gary K. Nelson, Atty. Gen., by Carl Waag, Former Asst. Atty. Gen., and William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

UDALL, Justice.

The defendant, William Seelen, was found guilty by a jury of assault with a deadly weapon, grand theft of a motor vehicle, and robbery. He was given sentences to run concurrently, of seven to ten years on the charge of assault with a deadly weapon, of two to five years on the charge of theft of a motor vehicle, and of twelve to fifteen years on the charge of robbery. He appeals from the judgment of the trial court and the sentences imposed thereon.

The basic facts pertaining to this case are as follows: Kerry David Burr, a 17-year-old high school student from Tucson, was working as a farm laborer in Casa Grande in July, 1968. On July 15th, he and another young man, John King, traveled to Phoenix late in the evening on Burr's motorcycle, to visit King's girl friend at Doctors' Hospital in Phoenix. While at the hospital they met a group of young men who were members of a motorcycle gang called "The Undertakers". The gang was at the hospital because their "president" was in the emergency room for burns. Burr and King were invited to a party that was being held by the gang on East Chambers Street in Phoenix.

The members of the gang whose names are significant to the facts of this case were Calvin L. "Deacon" St. John, Roger B. Lippe, Marchell L. Larson, David K. Lipkin, and the defendant, William Seelen.

Shortly after the group arrived at the place where the party was being held, Burr and King observed that at least three of the gang, including defendant Seelen, were armed with either a pistol or a gun. It soon became evident that the members of the group had decided to steal Burr's motorcycle and billfold.

Burr testified that the group formed a half circle in front of him and his motorcycle, and that without warning "Deacon" St. John held a rifle to Burr's head and said: "We want your bike." Burr began to remonstrate with them, whereupon Lippe, who was armed with a pistol, reached around Burr and grabbed and pulled his wallet out of his back pocket and started to look through it.

At this point the gang moved into the house, taking Burr with them. Lippe, upon looking through Burr's wallet, found, among other things, the Bill of Sale to his motorcycle. Thereafter, they forced Burr to write out a purported Bill of Sale to the motorcycle, on a piece of paper that was handed to him, and the original Bill of Sale and the purported new Bill of Sale were retained by one of the members of the gang. Burr and King were detained by the gang for an additional hour or two, and were then ordered into a car in which they were driven back to Casa Grande and dropped off at about 4:30 a. m. The next day Burr reported the incident to the authorities, and thereafter several members of the gang, including defendant Seelen, were arrested and brought to trial. Defendant Seelen was found guilty and was given the sentences mentioned above. From the judgment of the trial court he appeals.

■ The first issue raised by the defendant on appeal is whether he was entitled to his requested instruction on circumstantial evidence. The requested instruction provided as follows:

"I instruct you that to warrant a conviction based solely on circumstantial evidence, the evidence must not only be consistent with guilt but inconsistent

with every reasonable hypothesis of innocence."

This instruction is commonly referred to as the "circumstantial evidence" instruction. In State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970), we held that it is not necessary to give such an instruction to the jury if the jury has been properly instructed as to "reasonable doubt":

"It is the opinion of this court that the probative value of direct and circumstantial evidence are intrinsically similar; therefore, there is no logically sound reason for drawing a distinction as to the weight to be assigned each. We expressly overrule that portion of State v. Reynolds, [104 Ariz. 149, 449 P.2d 614], supra, and any other decision of this court which is contra to our holding in the instant case. We are aware that as a result of this holding it is no longer necessary to instruct the jury regarding the 'reasonable hypothesis' theory of circumstantial evidence where the jury is properly instructed as to 'reasonable doubt.' A proper instruction on 'reasonable doubt' as applied to all kinds of evidence gives the jury an appropriate standard upon which to make a determination of guilt or innocence; to instruct further is to invite the confusion of semantics." 106 Ariz. 386 at 391, 476 P.2d 841 at 846.

In the instant case, the jury was properly instructed as to reasonable doubt; hence, defendant was not entitled to his requested instruction on circumstantial evidence and the trial court was entirely correct in refusing the requested instruction.

■ The second issue raised on appeal is whether a conviction of both robbery and grand theft (motor vehicle) constitutes double punishment under A.R.S. § 13–1641 when both convictions are based on the same act. A.R.S. § 13–1641 provides that an act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. In construing this statute, we have held that

in order for two convictions to constitute double punishment, the two alleged crimes must have identical component parts and must have arisen out of the same act. State v. Mitchell, 106 Ariz. 492, 478 P.2d 517 (1970); State v. Boag, 104 Ariz. 362, 453 P.2d 508 (1969).

It is clear from the testimony in the record that defendant Seelen had a rifle in his possession when the group surrounded Burr, the victim, and when St. Johns held a rifle in his hand and told Burr they wanted his bike, as well as when Burr's billfold was removed from his pocket. Later, in the house, defendant Seelen held a rifle pointed at the victim's chest at the time he was compelled to sign the purported Bill of Sale to his motorcycle.

It is evident there were separate acts which amounted to separate crimes in this case. The defendant was present with the other members of the gang and was aiding and abetting in the robbery of the victim's billfold from his person. Later, defendant Seelen pointed a rifle at Burr at the time Burr was compelled to sign the alleged Bill of Sale to his motorcycle; hence, Seelen was aiding and abetting in the theft of the motorcycle.

Inasmuch as there were separate acts by the defendant which amounted to separate crimes of robbery and grand theft, defendant Seelen was not subjected to double punishment when he was sentenced on both convictions.

■ The third issue raised by the defendant is whether the filing of Count III (grand theft) and Count IV (robbery) was timely, inasmuch as those counts were filed more than 30 days after the defendant was held to answer by the magistrate.

It is the contention of the defendant that the state has not complied with Rule 80 of the Rules of Criminal Procedure, 17 A.R.S., since the amended information was not filed within thirty days from the time the defendant was held to answer by the committing magistrate.

It is the position of the state that Rule 145(B) of the Rules of Criminal Procedure

provides that when there is a variance between the allegations of the information and the evidence offered in support thereof:

"The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such variance to conform to the evidence."

Rule 145(C) provides in pertinent part:

"If the court is of the opinion that the defendant has been prejudiced in his defense upon the merits by any such defect, imperfection or omission or by any such variance the court may * * * postpone the trial, to be had before the same or another jury, on terms the court considers proper."

The minutes of the court show that the preliminary examination was held on July 31, 1968; that an information was filed on August 13th; that a motion to amend the information was filed on August 21st; and that the motion was presented to the court and taken under advisement on August 29th. Further, the minutes show that the motion to amend was granted on September 18th and that thereafter defense counsel moved for a continuance on the grounds that Count IV pertained to a capital case and that he would need more time to prepare his defense. This motion was granted by the court and the case was set for trial for October 3, 1968, at 9:30 a. m.

It is clear that the defendant was not prejudiced by the amendment and that he had been made aware, as early as August 21st, of the grounds for the amendment, and that he had by his own motion caused the trial to be delayed until October 3rd.

In the instant case, the original information was filed on August 13, 1968, well within the 30-day limit; it was only the *amended* information which was filed thereafter. The amendment merely made the information conform to the charge as made in the justice court. Under these circumstances, the trial court was not in error in allowing the state to amend the information.

The fourth issue raised on appeal is whether the trial court's instruction defining grand theft was fundamentally defective in that it may have permitted the jury to base a verdict of guilty on a finding of intent to *temporarily* deprive Burr of his motorcycle.

The instruction given by the trial court was as follows:

"It shall be unlawful for any person to take from another a motor vehicle or motorcycle with the intent to either temporarily or permanently deprive such other person of the motor vehicle. A person found guilty of intent to permanently deprive another of his motor vehicle or motorcycle is guilty of a felony."

The wording of this instruction is substantially identical to that in paragraphs A and B of A.R.S. § 13–672, the statute defining the crime of theft of a motor vehicle. Paragraph C of the statute provides as follows:

"A person found guilty of intent to *temporarily* deprive another of his motor vehicle or motorcycle is guilty of a *misdemeanor*." [Emphasis added.]

It appears that the instruction given by the trial court was inadequate in that it may have left the jury with the impression that an intent to merely *temporarily* deprive the victim of his motorcycle was sufficient to constitute grand theft, a *felony*. The error, however, was harmless, since the evidence presented at the trial was conclusive that the motorcycle was forcibly taken from the victim and he was permanently deprived of its possession. There was no evidence from which an inference could be drawn that the possession was temporary, nor was there any evidence offered to show that there was any thought of returning the motorcycle to the true owner. On the contrary, the evidence shows that two members of the gang, sometime after midnight, took Burr and King by automobile back to Casa Grande, and that during the trip to Casa Grande one of the co-defendants held a pistol in his lap, apparently to intimidate the victim and

his companion and to coerce them into not reporting the incident to the police.

We therefore conclude that the error complained of was harmless and that the fundamental rights of the defendant were not prejudiced by the giving of the instruction.

■ The fifth issue raised by the case is whether evidence that the defendant merely pointed a rifle at Burr is sufficient to support a conviction of assault with a deadly weapon, when there is no evidence that the defendant threatened Burr or made an overt act toward him. The defendant contends that there is no Arizona case that the mere holding of a gun in the presence of another constitutes an assault. Even if this statement by defendant is assumed to be true, it does not reflect the facts of the instant case. Here the testimony shows that when Burr's billfold was removed from his pocket defendant Seelen had a gun in his hand; that when Burr was being compelled to sign the Bill of Sale while surrounded by the defendant and his co-defendants, one of them had a pistol and another one, "Deacon" St. John, swung a rifle at Burr and then said, "Well, I had better not. I don't want to get blood all over the place." At the time this was happening the defendant was sitting across the room in a doorway to the bedroom with a high-powered rifle pointed at the victim's chest and Lippi was on the left side with a pistol. It was a co-ordinated, joint assault on the part of the defendant and the others and it was not possible for the victim to know which, if any, of the guns were loaded. During this interval of time two or three of the gang made threatening remarks as to what they would do to Burr if he should turn them in, and otherwise attempted to frighten and intimidate him. While all of this was going on the defendant was sitting in a crouching position with his rifle pointed at the victim.

As another ground for sustaining the conviction of assault with a deadly weapon, there is testimony to the effect that one of the codefendants had live ammunition in his pistol and that he was holding this loaded pistol aimed at the victim at the same time the defendant was pointing his rifle at the victim. It is therefore established beyond doubt that even if the defendant didn't have a bullet in his gun he still was aiding and abetting in the commission of the crime of assault with a deadly weapon.

The statute which defines the crime of assault with a deadly weapon is A.R.S. § 13–249. In construing that statute, we have held:

"To constitute an assault with a deadly weapon, the person assaulted need not be wounded, nor need the gun even be fired if the totality of the surrounding facts and circumstances are sufficient to enable the jury to find the necessary mens rea to constitute the crime charged." State v. Tosatto, 107 Ariz. 231 at 235, 485 P.2d 556 at 560 (1971). [Filed May 28, 1971]

We are of the opinion that the evidence presented in the instant case was sufficient to support the defendant's conviction of assault with a deadly weapon.

■ The final issue to which we address ourselves is whether the sentence imposed on the defendant of 12 to 15 years for robbery is unduly severe and should be reduced. A.R.S. § 13–1717 vests in this Court the power to reduce the length of a sentence imposed if, in our opinion, the conviction is proper but the punishment imposed is greater than under the circumstances of the case ought to be inflicted. We have on occasion exercised this power when it clearly appeared that a sentence was too severe. See State v. Killian, 91 Ariz. 140, 370 P.2d 287 (1962); State v. Hutton, 87 Ariz. 176, 349 P.2d 187 (1960).

The record in the instant case reveals that the defendant was 19 years old when these crimes were committed; that he was a graduate of Camelback High School; that he comes of a respected family in the community; and that shortly after this occurrence he had married and that he and

his wife were expecting a child. The testimony also showed that he had no previous record of an arrest, except for a few citations on minor traffic violations. The testimony does not indicate that he ever said anything during the time that the crimes were being committed or that he ever touched the billfold of the defendant or received any benefits from the robbery. His sole participation in the crime was that he had a gun in his hand and stood in a threatening posture while the crimes were perpetrated on the victim. He apparently had no part in taking Burr and King back to Casa Grande.

The report of the probation officer gives no further information concerning the background of the defendant other than is stated above. It is apparent that he was being led and was under the domination of the older, more experienced members of the gang.

We are of the opinion that the sentence for robbery should be modified to run for the same length of time as was imposed for assault with a deadly weapon, i. e., seven to ten years. We believe the ends of justice will be better served if the defendant is given greater opportunity to rehabilitate himself than would be the case if the sentence of 12 to 15 years for robbery were permitted to stand.

Therefore it is ordered that the judgment and sentence of the trial court on the charge of robbery be modified so that the sentence for robbery of from 12 to 15 years shall be reduced to a sentence of from 7 to 10 years, to begin from the date of the original sentences and to run concurrently with the sentence for assault with a deadly weapon and the sentence for grand theft of a motor vehicle. In all other respects the judgment of the trial court is affirmed.

Judgment affirmed as modified.

STRUCKMEYER, C. J., and LOCKWOOD, J., concur.