498 P.2d 209

**The STATE of Arizona, Appellee,**
v.
**Roger B. LIPPI, Appellant.**
**No. 2024.**

Supreme Court of Arizona,
In Banc.
June 16, 1972.

Rehearing Denied July 11, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon and Frank Sagarino, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Anne Kappes, Deputy Public Defender and Warren R. Brown, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a judgment of conviction for the crimes of assault with a deadly weapon, § 13–249, subsec. B A.R.S.;

robbery, § 13–641, § 13–643, subsec. B A.R.S.; and kidnapping, § 13–491, subsecs. A and D A.R.S., for which the defendant received 20–25 years as to each charge, and theft of a motorcycle, § 13–672 A.R.S., for which the defendant received 9–10 years, all sentences to run concurrently.

We are called upon to answer the following questions:

1. Do the facts of the case support separate convictions as to all four charges?

2. Did the trial court erroneously admit the transcript of the testimony of the victim taken at the preliminary hearing when the victim did not appear for trial?

3. Did the court improperly instruct the jury on the definition of theft of a motor vehicle?

4. Did the trial court err in admitting into evidence a photograph of defendant?

The facts necessary for a determination of this matter are as follows. On 15 July 1968 Kerry David Burr drove a friend, John Howard King, from Casa Grande, Arizona, to Phoenix, Arizona, on his motorcycle so that King could see a friend in a Phoenix hospital. At the hospital Burr and King met with several members of the "Undertakers", a motorcycle gang, who invited them to a party at a house where several of the "Undertakers" lived. At the party later that night, as Burr was standing near his motorcycle which he had pushed over to a corner of the house, several members of the "Undertakers" came from inside the house with guns and crowded around Burr. The defendant pointed a pistol at Burr's head and asked for his wallet. Then, with guns still pointed at Burr, they escorted him inside the house where they forced him to sign over to them the bill of sale for the motorcycle.

It appears from the record that, once this had been accomplished, Burr came outside with the others and started to walk down an alley. His friend, John King, approached him and told him they had a ride back to Casa Grande. So John King and Kerry Burr got into a car and were taken back to Casa Grande by one of the friends of the "Undertakers." The defendant was not in the car, nor does it appear that he was involved beyond this point. Kerry Burr reported the theft of the motorcycle to the Phoenix Police Department, and a Phoenix police officer testified that an investigation was conducted by the Phoenix Police Department but the motorcycle has not been found.

The defendant Lippi was charged along with five codefendants with assault with a deadly weapon, robbery, kidnapping, and theft of a motor vehicle.

A preliminary hearing at which Kerry Burr testified was held for the defendant Lippi and two of his codefendants who were represented by the Public Defender's Office. At his arraignment on 30 August 1968 defendant pled not guilty to all four charges and denied having been previously convicted of burglary which was alleged in the information. On 4 October 1968 the Public Defender was granted permission to withdraw as counsel because of a possible conflict of interest. Trial was held before a jury at which defendant was represented by new and separate counsel. After the State had been granted two continuances because of Kerry Burr's failure to appear as a witness for the State, Kerry Burr's father, who was at that time Sheriff of Pima County, testified that he had personally served the subpoena upon his son and that he had not seen him for two days. The court then allowed, over objection of defense counsel, the preliminary hearing testimony of Kerry Burr to be read into evidence. The State was also allowed, over defense objections, to admit into evidence a photograph of defendant as he looked at the time of the crime.

The jury returned a verdict of guilty against the defendant on all four counts, and the court found the defendant guilty as to the prior conviction. The court denied defendant's motion for new trial and sentenced him to serve 20–25 years for the crimes of assault with a deadly weapon,

robbery and kidnapping, and 9–10 years for the crime of theft of a motor vehicle, all sentences to run concurrently.

## DO THE FACTS SUPPORT FOUR SEPARATE CONVICTIONS?

■ Defendant contends that his convictions for both robbery and theft of a motor vehicle violate § 13–1641 A.R.S. which provides as follows:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. * * *"

This same question was raised and answered in State v. Seelen, 107 Ariz. 256, 485 P.2d 826 (1971) which concerned one of the codefendants. In that case we stated:

"It is clear from the testimony in the record that defendant Seelen had a rifle in his possession when the group surrounded Burr, the victim, and when St. Johns held a rifle in his hand and told Burr they wanted his bike, as well as when Burr's billfold was removed from his pocket. Later, in the house, defendant Seelen held a rifle pointed at the victim's chest at the time he was compelled to sign the purported Bill of Sale to his motorcycle.

"It is evident there were separate acts which amounted to separate crimes in this case. The defendant was present with the other members of the gang and was aiding and abetting in the robbery of the victim's billfold from his person. Later, defendant Seelen pointed a rifle at Burr at the time Burr was compelled to sign the alleged Bill of Sale to his motorcycle; hence, Seelen was aiding and abetting in the theft of the motorcycle.

"Inasmuch as there were separate acts by the defendant which amounted to separate crimes of robbery and grand theft, defendant Seelen was not subjected to double punishment when he was sentenced on both convictions." State v. Seelen, supra, at p. 259, 485 P.2d, at p. 829.

■ Defendant further contends that the evidence does not support convictions for both kidnapping and assault with a deadly weapon. That the evidence presented was sufficient to support a conviction for assault with a deadly weapon there can be no doubt. State v. Seelen, supra, at page 261, 485 P.2d 826.

We faced a similar problem in State v. Mitchell, 106 Ariz. 492, 478 P.2d 517 (1970). There the defendant was convicted of attempted kidnapping and assault with a deadly weapon. He challenged the convictions under the double punishment statute § 13–1641 A.R.S. In interpreting this statute we said:

"The practical test is to eliminate the elements in one charge and determine whether the facts left would support the other charge." State v. Mitchell, supra, at 495, 478 P.2d, at 520. See also, State v. Tinghitella, 108 Ariz. 1, 491 P.2d 834 (1971).

In the instant case, while the crime of assault with a deadly weapon can stand alone, once the elements of the assault with a deadly weapon are removed, the kidnapping charge cannot stand alone. We have held that "punishment" in this statute, § 13–1641 A.R.S., includes both the conviction and the sentence imposed thereon. State v. Ballez, 102 Ariz. 174, 427 P.2d 125 (1967). We have also stated:

"Our court has stated that where a person is convicted and sentenced on two counts based upon one act, that the trial judge should then set aside the lesser conviction. (citations omitted) In view of the fact that the sentences imposed herein are the same and are concurrent, it will not be necessary to remand for resentencing." State v. Mendoza, 107 Ariz. 51, 56, 481 P.2d 844, 849 (1971).

In the instant case, the punishments for assault with a deadly weapon, a gun, § 13–249, subsec. B A.R.S., and kidnapping with a gun, § 13–491, subsec. D A.R.S., are the same. Inasmuch as the kidnapping charge appears to be, factually, the weaker of the two, we therefore hold that the kidnapping

conviction must be set aside and the sentence thereunder vacated. State v. Mitchell, supra; State v. Ballez, supra.

## WAS THE TRANSCRIPT OF THE VICTIM'S TESTIMONY TAKEN AT THE PRELIMINARY HEARING PROPERLY ADMITTED AT TRIAL?

■ A defendant's rights to cross-examine and confront the witnesses against him are not abridged by the introduction at trial of preliminary hearing testimony where the accused had the opportunity at the preliminary hearing to confront and cross-examine the witnesses against him. State v. Head, 91 Ariz. 246, 371 P.2d 599 (1962); State v. Stuard, 104 Ariz. 305, 452 P.2d 98 (1969); State v. Reynolds, 7 Ariz.App. 48, 436 P.2d 142 (1968).

■ Defendant contends, however, that the State did not make a good faith effort to obtain the presence of the witness.

Rule 30, Rules of Criminal Procedure, 17 A.R.S., states:

"B. When a witness has been examined as provided in Rule 23 and his testimony taken as provided in Rule 28, such testimony may be admitted in evidence upon the trial of the defendant for the offense for which he is held, either on behalf of the state or the defendant, if for any reason the testimony of the witness cannot be obtained at the trial and the court is satisfied that the inability to procure such testimony is not due to the fault of the party offering it."

The record discloses that the victim was personally subpoenaed to appear at trial by his father who was at that time Sheriff of Pima County. His father testified that he was unable to locate his son and that he had eight Deputy Sheriffs looking for him who were also unable to locate him. Furthermore, the Deputy County Attorney assigned to this case testified that he had been in contact with Sheriff Burr regarding the whereabouts of Burr's son, was unaware of Kerry Burr's whereabouts, and had done nothing to cause his unavaila-

bility. We are of the opinion that Rule 30, subd. B was complied with in the instant case. See State v. Stuard, supra; State v. Reynolds, supra.

■ Defendant further contends, that at the preliminary hearing, defendant Lippi and two of his codefendants were represented by the same attorney who, after the preliminary hearing, was allowed to withdraw because he felt he could not effectively represent all three codefendants. Defendant contends that a conflict of interest existed at the preliminary hearing which precluded his attorney from effectively cross-examining the victim, and that therefore the victim's testimony should not have been admitted. We find nothing in the transcript of the preliminary hearing to show that the rights of the defendant were prejudiced by the alleged lack of adequate representation by counsel. The fact that the attorney anticipated a possible conflict in representing all three codefendants jointly at trial does not necessitate a finding of a conflict at the preliminary hearing. We have previously stated:

"The Sixth Amendment of the United States Constitution provides that 'In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence.' Under the Fourteenth Amendment, the right of defendants to counsel in criminal cases is, of course, imperative in state as well as federal trials. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The essence of this right is the right to effective, competent and adequate representation. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Where one attorney represents two codefendants, a conflict of interest which denies one or both defendants the effective assistance of counsel is a distinct possibility. When such a conflict does in fact exist, the conviction cannot stand. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). However, the mere fact that a single attorney represents two defendants in a joint

criminal trial is not ipso facto evidence of lack of effective counsel. Rather it is necessary that a conflict of interest must have actually existed or have been inherent in the facts of the case from which the possibility of prejudice flowed. Baker v. Wainwright 422 F.2d 145 (5th Cir. 1970); State v. Kruchten, 101 Ariz. 186, 417 P.2d 510 (1966), cert. denied, 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687 (1967)." State v. Arce, 107 Ariz. 156, 162, 483 P.2d 1395, 1401 (1971).

There is no evidence in the record that defense counsel did not adequately protect the defendant's interests at the preliminary hearing.

## DID THE COURT IMPROPERLY INSTRUCT THE JURY ON THE DEFINITION OF THEFT OF A MOTOR VEHICLE?

■ The statute under which defendant was convicted reads as follows:

"§ 13–672. Theft of a motor vehicle or motorcycle; penalty

"A. It shall be unlawful for any person to take from another a motor vehicle or motorcycle with the intent to either temporarily or permanently deprive such other person of such motor vehicle or motorcycle.

"B. A person found guilty of intent to permanently deprive another of his motor vehicle or motorcycle is guilty of a felony.

"C. A person found guilty of intent to temporarily deprive another of his motor vehicle or motorcycle is guilty of a misdemeanor."

The court instructed the jury on theft of a motor vehicle as follows:

"You are instructed that theft of a motor vehicle is the taking from another of a motor vehicle or motorcycle with intent to either temporarily or permanently deprive such other person of such motor vehicle or motorcycle."

And:

"I will explain to you that the last two verdicts deal with theft of a motor vehicle, and if you determine that the defendant is guilty of Count 4, theft of a motor vehicle, then you must sign one or the other of these two, and I will now read them. We the Jury, duly impaneled and sworn in the above entitled action, upon our oaths, do find the Defendant guilty of Count 4, theft of a motor vehicle, and find intent to temporarily deprive another thereof. And the last one, We the Jury, duly impaneled and sworn in the above entitled action, upon our oaths do find the Defendant guilty of Count 4, theft of a motor vehicle, and find intent to permanently deprive another thereof."

We believe under the facts that the jury was properly instructed.

## DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE DEFENDANT'S PHOTOGRAPH?

■ At the trial of defendant, counsel for the State introduced and had admitted into evidence, over objection by defense counsel, a photograph of defendant as he appeared at the time of the crime. The State contends that, since the defendant's hair was cut short for the trial, the photograph was relevant for identity purposes. The defendant, on the other hand, contends that the introduction of the photograph showing defendant with long hair inflamed the passions of the jury against him. At the trial, the following transpired:

"Q Now, you are absolutely sure that you saw Mr. Lippi that night?

"A Oh yes.

"Q Isn't it true that some of the boys that were over there were around the same height as Mr. Lippi?

"A Oh yes. Little John is, but I know both the boys pretty well.

"Q And you distinguish them by their faces; is that correct?

"A Yes. They were in the yard, which was well lighted.

"Q So you could—you say that there's no possibility that you mistook their faces as to who was doing what that particular night?

"A No. It isn't as if it was the first time I saw them, you know, I knew them.

"Q Would you say that Mr. Lippi's face today appears the same as it appeared then when you saw what he was doing?

"A Oh yes.

"Q I hand you Exhibit 2 for identification and ask you if you can identify the person portrayed in that photograph?

"A Yes. That's Roger.

"Q Is that the way that Roger looked on the 15th and 16th of July?

"A His hair is longer. Yes.

"Q And that's the way he looked at that time?

"A Yes.

"Q So he did look different then than he did today?

"A Well, when you say his face, I mean to recognize someone, you know, to me he looks the same. But his hair was long then, and it's shorn now.

"Q In other words, the person depicted in Exhibit 2 for identification, to you, looks the same as Mr. Lippi looks today?

"A Yes. His features are the same.

"MR. HERTZBERG: I will offer Exhibit 2 into evidence.

"MR. TAYLOR: I will object, Your Honor. There's no relevancy in this, no materiality.

"THE COURT: Counsel, what relevancy does the picture have?

"MR. HERTZBERG: Possible mistaken identification as to who she observed during prior testimony as to the number of people being present and the picture showing a substantial differ-

ence in appearance between Mr. Lippi then and Mr. Lippi now.

"MR. TAYLOR: May we approach the bench, Your Honor?

"THE COURT: Counsel may approach the bench.

(The following proceedings were had at the bench out of the hearing of the Jury.)

"MR. TAYLOR: If it please the Court, we would object to the admission of this picture on the grounds that the only thing it can do is inflame the passions of the Jury. That's the only reason it's being admitted. We will object to it.

"THE COURT: May I see it?

"MR. TAYLOR: It's extremely prejudicial, has no bearing on the issues.

"MR. HERTZBERG: Your Honor, I believe the only prejudicial fact of the photograph is a photograph that would bear on a mug shot. If this is the way Mr. Lippi looked at the time and she bases identification on it, I think the Jury is entitled to see the difference in appearance as to readily observe or not whether or not it was him on that particular night.

"THE COURT: Very well. Exhibit 2 will be received in evidence."

Exhibit 2 is before this court and shows the defendant with a sparse beard and some long hair at the back of his head. It is not a typical "mug shot," and does not suggest a prior record. See State v. Cumbo, 9 Ariz.App. 253, 451 P.2d 333 (1969).

In the area of admissibility of exhibits, the trial court's discretion will not be disturbed even though the effect of the exhibits may be arguably prejudicial, unless such discretion has been abused. State v. Beers, 8 Ariz.App. 534, 448 P.2d 104 (1969). While we may feel that the exhibit should not have been admitted, it having little or no probative value, we are unable

to say that it was so prejudicial as to amount to an abuse of the trial court's discretion in admitting it into evidence.

The judgments and sentences as to the crimes of assault with a deadly weapon, robbery, and theft of a motor vehicle are affirmed. The judgment and sentence as to the crime of kidnapping is set aside.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.