508 P.2d 1156

The STATE of Arizona, Appellee,

v.

Salvatore Joseph ALBERIGO, Jr., Appellant.

No. 2267.

Supreme Court of Arizona,
In Banc.
April 19, 1973.

Gary K. Nelson, Atty. Gen., by Mary Z. Chandler, Asst. Atty. Gen., Phoenix, for appellee.

William M. Egan, Flagstaff, Preble E. Pettit, Phoenix, Jerry N. Thomas, Flagstaff, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal by the defendant, Salvatore Alberigo, Jr., from jury verdicts and judgments of guilty to the crimes of escape, § 13–396 A.R.S., and obstructing justice, § 13–541 A.R.S., and concurrent sentences of not less than one year on the escape charge and of not less than seven nor more than fifteen years on the obstructing justice charge.

We are asked to answer two questions on appeal:

1. Was it error for the trial court to refuse to give defendant's requested instruction as to involuntary departure from custody as a defense to escape?

2. Was defendant properly sentenced on the charge of obstructing justice?

The facts necessary for a determination of this matter on appeal are as follows. Defendant was in custody on an unrelated charge, and was also being held for extradition to another state. He was originally arrested by the Flagstaff City Police when they found him in possession of a stolen motorcycle. At this first arrest, the defendant struck the officer, knocked him to the ground, and then tried to run.

The defendant claims that while in the city jail and the county jail, he was repeatedly threatened by numerous officers that they would get him for striking a police officer. Defendant claims that the officers even went so far as to imply that he would not make it to trial. Defendant claims that up until the moment of his escape and even thereafter he was in fear of reprisals by the police. While in the process of being taken from the Coconino County Jail to a doctor's office for medical treatment, the defendant escaped from custody. Defendant claims that this fear led him to escape and try to make it to his lawyer in California and turn himself in once there.

To facilitate his escape, the defendant grabbed a deputy sheriff around the neck, grabbed the deputy's gun from its holster,

and held it to the deputy's head. The deputy testified:

"A    I reached over to assist him, to help him up. I thought he had slipped in the snow.

"Q    And what occurred, if anything?

"A    He sprang up and got me by the throat and flipped my gun out of my holster.

\*        \*        \*        \*        \*        \*

"Q    Were you able to move?

"A    I could move my hand, and I started to fight him. And then he said, 'Don't make me hurt you,' and I realized he had my Magnum with the hammer back, and right up against the side of my head, like that.

"Q    Did you feel Mr. Alberigo take your gun?

"A    No, I didn't. I had a little clamshell holster, and it was—you could flip it out without any problem whatever.

"Q    Were you able to see him with the gun?

"A    I felt it.

"Q    With the pistol?

"A    I felt the gun against the side of my head, and then I saw it, and when he did that, I offered no resistance."

He then instructed the deputy to drive some distance outside of town and once there defendant took the deputy's weapons and car keys and made his escape through the woods. He was captured shortly thereafter.

Defendant was charged with escape, § 13–396 A.R.S.; obstructing justice, § 13–541, subsecs. A and B A.R.S.; kidnapping, § 13–491, subsecs. A and B A.R.S.; and assault with a deadly weapon, § 13–249, subsecs. A and B A.R.S. The jury returned verdicts of not guilty to the charges of kidnapping and assault with a deadly weapon and guilty to the crime of escape and obstructing justice.

## WAS IT ERROR TO REFUSE DEFENDANT'S REQUESTED INSTRUCTION?

The defendant requested that the court give an instruction concerning involuntary departure from custody as a defense to escape. The defendant requested instruction No. 6 which reads as follows:

"If an inmate has departed to the limits of his custody while influenced so to do so by threats or menaces which create in his mind a fear of imminent and immediate danger and which are sufficient to show that he has reasonable cause to believe that his life will then and there be endangered if he refused to so depart from the limits of his custody, and if he then believes that his life will be so endangered, he does not commit the crime of escape by such departure.

"By the same token, his involuntary departure does not free him from legal custody and he is at all times while acting under such influence, a prisoner, in contemplation of the law.

"If, however, the threats or menaces are removed and he is no longer under such influences to the end that he no longer believes that his life is then imminently and immediately endangered, a further, continued, willful and intentional departure from the limits of custody by him will constitute the crime of escape."

Instead of this instruction the court gave an instruction on intent as follows:

"In the crime of escape there must exist in the mind of the perpetrator the specific intent to voluntarily leave lawful custody with the intent to evade the due course of justice, and unless such intent so exists that crime is not committed.

\*        \*        \*        \*        \*        \*

"An escape is not justified on the ground that conditions of imprisonment are intolerable and inhumane so as to give the prisoner or escapee reason to believe or fear for his personal safety."

The instruction requested by defendant was taken from People v. Wester, 237

Cal.App.2d 232, 46 Cal.Rptr. 699 (1965), in which the defendant claimed his companion threatened to kill him if he would not go along. The facts distinguish this case from the instant case and the instruction is only applicable in the specific circumstances of that case.

It is well settled law that conditions in a prison afford no justification for escape. People v. Richards, 269 Cal.App.2d 768, 75 Cal.Rptr. 597 (1969); State v. King, 372 S.W.2d 857 (Mo.1963), solitary confinement; People v. Miller, 196 Cal. App.2d 171, 16 Cal.Rptr. 408 (1961), fear of prison officers; State v. Palmer, 6 Terry, Del., 308, 72 A.2d 442 (1950), bad food, brutal guards, recreation, education and medical attention inadequate; People v. Whipple, 100 Cal.App. 261, 279 P. 1008 (1929), intolerable living conditions and brutal and inhuman treatment by guards; State v. Cahill, 196 Iowa 486, 194 N.W. 191 (1923), cell infested with bugs, worms and vermin, and without bed or chair, unhealthy, food consisting of an inadequate supply of bread alone; Johnson v. State, 122 Ga. 172, 50 S.E. 65 (1905), escape from Georgia chain gang to avoid unmerited punishment by guards; Hinkle v. Commonwealth, 23 Ky.Law Rep. 1988, 66 S.W. 816 (1902), fear on the part of prisoner in custody of sheriff of being shot by a third person; State v. Davis, 14 Nev. 439, 33 Am.Rep. 563 (1880), condition of jail filthy, loathsome and vermin infested; see also 70 A.L.R.2d 1430 at 1452–1453.

The jury was adequately instructed as to the intent required for conviction. The jury was also instructed correctly that conditions of confinement do not excuse an escape.

We find no error in the instructions.

## WAS DEFENDANT PROPERLY SENTENCED?

The jury was read the information which stated:

"For a further and separate cause of action being a different offense than set forth in Count I, the said SALVATORE JOSEPH ALBERIGO, on or about the 10th day of March, 1970, and before the filing of this information in and at the County of Coconino, State of Arizona, then and there being, did then and there wilfully, unlawfully and feloniously attempt by means of a threat or violence to deter or prevent a public officer from performing a duty imposed upon the officer by law, or wilfully resisted, delayed or obstructed the officer in the discharge or attempt to discharge a duty of his office, or knowingly resisted by the use of force or violence, the officer in the performance of his duty while armed with a gun, in violation of A.R.S. Sec. 13–541, [subsecs.] A and B, as amended."

And the jury was instructed as follows: "You are instructed that a person who attempts by means of any threat or violence to deter or prevent a public officer from performing any duty imposed upon the officer by law, or who wilfully resists, delays or obstructs a public officer in the discharge or attempt to discharge any duty of his office, or who knowingly resists by the use of force or violence the officer in the performance of his duty while armed with a gun is guilty of the crime of obstructing justice."

The form of verdict, however, did not mention that the defendant was armed with a gun. The verdict stated:

"We, the Jury, duly empaneled and sworn in the above-entitled action, upon our oaths do find: the defendant, Salvatore Joseph Alberigo, GUILTY of Obstructing Justice."

The judge then stated:

"By reason of the verdicts of the jury it is the judgment of the Court that the defendant is guilty of the crime of escape and guilty of the crime of obstructing justice."

In the formal written "judgment and commitment to prison" it states that the

defendant is guilty of obstructing justice while armed with a gun. The defendant was sentenced to not less than seven nor more than fifteen years in the State Prison, pursuant to the enhanced sentencing provision of § 13–541, subsec. B A.R.S.

Defendant argues that it was error to sentence him under § 13–541, subsec. B A.R.S., since the jury made no specific finding that the defendant was armed with a gun. Since the maximum punishment under § 13–541, subsec. A A.R.S. is five years, the sentence imposed by the court would be in excess of that authorized.

While we believe that the better practice would be to include in the form of verdict and pronouncement of judgment the fact that the crime was committed while armed with a gun, it was not error in the instant case. State v. Tosatto, 107 Ariz. 231, 485 P.2d 556 (1971) is dispositive of this issue. In that case we stated:

"(VI) May a Defendant be Sentenced under A.R.S. § 13–249(B) when the Jury has Failed to Find that the Assault with a Deadly Weapon was Committed with a Gun?

"For a defendant to be sentenced under § 13–249(B), providing for an enhanced punishment where a gun is used in committing the assault, the jury need not make a finding that a gun was used in returning its verdict. See, State v. Felix, 107 Ariz. 211, 484 P.2d 631, filed May 13, 1971. All that is necessary is that the evidence presented clearly indicates that the assault was committed by means of a gun." 107 Ariz. 231 at 235, 485 P.2d at 560.

There is no question in the instant case that the defendant used a gun in committing the crime of obstructing justice and we find no error in the sentencing, it being within the limits set by statute.

Judgments and sentences affirmed.

HAYS, C. J., STRUCKMEYER, LOCKWOOD, and HOLOHAN, JJ., concur.