EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VICENTE PÉREZ DÍAZ, acusado y apelante.

Núm. 8562.—*Sometido:* Marzo 7, 1941. *Resuelto:* Abril 23, 1941.

*Rafael y Guillermo Atiles Moréu,* abogados del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

En febrero 16 de 1938 el Fiscal del Distrito de Arecibo formuló acusación contra Vicente Pérez Díaz imputándole la comisión de un delito de homicidio involuntario.

Alegó el acusado que era inocente y celebrado a su instancia el juicio ante un jurado, fué declarado culpable. Solicitó un nuevo juicio. Desestimó la corte su moción y dictó sentencia el 11 de marzo de 1940 imponiéndole cinco meses de cárcel.

Apeló Pérez Díaz y en su alegato señala cinco errores, como sigue: 1, la acusación no aduce hechos suficientes constitutivos del delito de homicidio involuntario; 2, bajo una acusación de acuerdo con el artículo 328 del Código Penal no cabe un veredicto de homicidio involuntario ni la consiguiente sentencia; 3, la corte erró al desestimar la moción de nuevo juicio y al dictar inmediatamente su sentencia; 4, erró también al dar sus instrucciones al jurado a base de un delito de homicidio involuntario y al invadir las atribuciones del propio jurado sobre apreciación de la prueba, y 5, el veredicto es contrario a la evidencia practicada.

Argumentando su primer señalamiento de error sostiene el apelante que los hechos alegados en la acusación constituyen el delito previsto y castigado en el artículo 328 del Código Penal y no en el 203 del mismo y por tanto que

dicha acusación no es suficiente para servir de base a un proceso de homicidio involuntario.

El artículo 328 citado, prescribe:

"Todo conductor, maquinista, guardafreno, guarda-aguja, u otra persona encargada del todo o en parte de cualquier vagón, locomotora, tren de ferrocarril, automóvil o embarcación y cualquier despachador de trenes (*train dispatcher*), telegrafista, jefe de estación o cualquier otra persona encargada del todo o en parte del deber de despachar o dirigir los movimientos de dicho vagón, locomotora, tren de ferrocarril, automóvil o embarcación, que, por imprudencia temeraria o descuido, lo dejase o hiciese chocar con otro vagón, locomotora, automóvil o embarcación, tren o cualquiera otro objeto o cosa, ocasionando de este modo la muerte de una persona, incurrirá en pena de presidio por un término máximo de cinco años.

"Si como consecuencia del choque resultase daño para alguna persona, dicho conductor, maquinista, guardafreno, guarda-aguja u otra persona, incurrirá en pena de cárcel por un término máximo de dos años, o multa máxima de mil dólares, o en ambas penas a discreción de la corte."

Y el 203, dispone:

"Homicidio, Definición. Homicidio es dar muerte ilegal a un ser humano sin que medie malicia. Es de dos clases:

"1. Voluntario. Voluntario: cuando ocurre con ocasión de una súbita pendencia o arrebato de cólera.

"2. Involuntario. Involuntario: cuando ocurre al realizarse un acto ilegal, que no constituyere delito grave (*felony*); o al realizarse un acto legal que pudiere ocasionar muerte en forma ilegal, o sin la debida prudencia o circunspección."

La acusación formulada es como sigue:

"El Fiscal formula acusación contra Vicente Pérez Díaz, por el delito de Homicidio Involuntario (*misdemeanor*), cometido de la manera siguiente:

"El referido acusado, Vicente Pérez Díaz, con anterioridad a la fecha de la presentación de esta acusación, o sea, el día 14 de diciembre de 1937, y en Manatí, P. R., que forma parte del distrito judicial de Arecibo, P. R., ilegal, voluntaria, maliciosa y criminalmente, mientras manejaba como *chauffeur* los movimientos del carro marca Pontiac Núm. 11124, sin guardar la debida prudencia, cuidado y cir-

cunspección, guiando a velocidad excesiva por un camino público, sin tocar *klaxon*, bocina o aparato de aviso de clase alguna, por negligencia y descuido y mientras trataba de pasarle a un caballo montado por el Sr. Pascual Bruno Meléndez, chocó con dicho caballo, haciendo que Pascual Bruno Meléndez se cayese del mismo, produciéndose varias heridas y contusiones, entre ellas, la fractura del cráneo, que le produjo una hemorragia intra-craneal, siendo todo ello la causa de la muerte ilegal del referido Pascual Bruno Meléndez, ocurrida en el Hospital Municipal de Manatí, varias horas después.''

Examinada esa acusasión a la luz del último de los preceptos transcritos, contiene a nuestro juicio todas las alegaciones necesarias para imputar el delito de homicidio involuntario.

Manejar un automóvil en la forma expuesta en la acusación es un acto ilegal que no constituye un delito grave *(felony)* sino menos grave *(misdemeanor)* y como la muerte ocurrió al realizarse dicho acto, es claro que se trata de un delito de homicidio involuntario.

En el caso de *El Pueblo* v. *Benjamín,* 44 D.P.R. 445, Benjamín fué acusado de homicidio involuntario. Celebrado el juicio por jurado, éste rindió veredicto de culpabilidad. La corte dictó sentencia condenatoria. Se apeló alegándose que la prueba era insuficiente y esta corte resolvió:

''Si de toda la evidencia practicada puede concluirse que el *chauffeur* que ocasionó con su automóvil la muerte que se le imputa caminaba a gran velocidad, por su izquierda, por una carretera recta, pudiendo haber visto perfectamente la persona con quien chocó que se encontraba ya en el centro del camino, no hay base para revocar la sentencia que de acuerdo con el veredicto del jurado condenó al *chauffeur* como autor de un delito de homicidio involuntario.''

Y en el caso del *Pueblo* v. *Menéndez,* 43 D.P.R. 438, se decidió:

''Prueba tendente a revelar que un acusado que conducía su automóvil con luces opacas, casi totalmente apagadas, en ocasión en que un automóvil venía detrás de su vehículo y otro en dirección opuesta, lo echó hacia la derecha sin dar señal ni aviso y ocasionó la muerte a un ser humano, es suficiente para someter el caso, con las debidas instrucciones, al jurado en proceso por homicidio involuntario.''

En 5 Am. Jur. 925, resumiendo la jurisprudencia sobre la materia, se dice:

"Bajo los estatutos que disponen que el causar la muerte de otra persona al llevar a efecto un acto ilegal que no envuelve un delito grave (*felony*) es homicidio, una persona que conduce un automóvil, en violación de un estatuto u ordenanza para regular la velocidad o prescribiendo precauciones a ser observadas por los conductores de automóviles, y como resultado de tal infracción mata a otra, es culpable de homicidio."

No hay duda de que examinada la acusación a la luz de lo prescrito en el artículo 328 del Código Penal, se encuentra que sería también suficiente para imputar el delito a que el mismo se refiere, pero no estamos conformes con el apelante en que porque ello sea así, el fiscal no pueda elegir y esté obligado a perseguir al culpable únicamente de acuerdo con el repetido artículo.

Para sostener su criterio cita el apelante algunos pasajes de la opinión de esta corte en el caso del *Pueblo* v. *Padilla*, 56 D.P.R. 144, 152. Ni siquiera dichos pasajes sostienen su contención, pues nada en definitiva resuelven. La decisión en sí le es adversa. Se resume como sigue:

"Un solo acto puede constituir una infracción de distintos estatutos. En tal caso, puede el Pueblo optar por procesar bajo uno u otro estatuto."

"Los preceptos posteriores de un estatuto penal derogan los anteriores cuando éstos son claramente irreconciliables con los más antiguos. En el caso de autos, los artículos 328 y 204 del Código Penal, como fueron enmendados en 1916 y 1933, respectivamente, se examinan para concluir que no habiendo conflicto alguno entre ellos, en su consecuencia, tampoco había derogación implícita del primero por el último."

Tampoco contradicen lo que dejamos resuelto los otros casos de esta corte que invoca el apelante, a saber: *Pueblo* v. *González*, 24 D.P.R. 613, *Pueblo* v. *Limardo*, 29 D.P.R. 46, *Pueblo* v. *Jorge*, 37 D.P.R. 982, y *Pueblo* v. *Quevedo*, 15 D.P.R. 73.

Y lo resuelto encuentra apoyo en las siguientes decisiones de este propio tribunal, a saber: *Pueblo* v. *Lebrón,* 23 D.P.R. 658, *Pueblo* v. *Irizarry,* 57 D.P.R. 186, 191, *Pueblo* v. *Alvarez,* 56 D.P.R. 19, y *Pueblo* v. *Jiménez,* 31 D.P.R. 351.

█ El segundo señalamiento de error está predicado al primero. No existe, por consiguiente. Si la acusación imputa la comisión de un delito de homicidio involuntario y por ese delito fué el acusado perseguido por el fiscal, es claro que no erró el jurado al rendir su veredicto en la forma en que lo hizo, ni erró tampoco la corte al dictar su sentencia basada en el veredicto y en la ley.

█ Argumentando el tercer error el apelante sostiene que la corte de distrito violó lo dispuesto en el artículo 309 del Código de Enjuiciamiento Criminal al dictar sentencia antes de los dos días fijados por el estatuto.

La ley invocada prescribe:

"Después de una confesión o veredicto de culpabilidad, o después de dado un veredicto contra el acusado, en un caso en que se alegare haber sido éste anteriormente declarado convicto o absuelto, si no se suspende la sentencia o se concede un nuevo juicio, el tribunal señalará día para dictar sentencia, que, en casos de *felony* (delito muy grave), será cuando menos dos días después del veredicto, si el tribunal se propone continuar en sesión, mientras tanto; pero si no fuese así, entonces será en fecha tan distante como pueda razonablemente fijarse."

Y todo lo que en los autos consta sobre el particular está contenido en la propia sentencia dictada por la corte, así:

"En el día de hoy y en corte abierta compareció el acusado Vicente Pérez Díaz asistido de su abogado Lic. Pedro Santos, a recibir su sentencia en el proceso que por el delito de homicidio involuntario se le sigue y en el cual recayó veredicto del jurado declarándole convicto de dicho delito, después de haber sido declarada sin lugar una moción de nuevo juicio en este mismo día. La corte le informó de la naturaleza del cargo que se le hace, de la alegación de su defensa, del veredicto recaído, así como del fallo de convicción dictado por esta corte el día 18 de diciembre de 1939. Y preguntado el reo si tenía alguna razón legal para impedir que se le dicte sentencia en

este acto, y habiendo manifestado que no, la corte procede a dictarla y al efecto condena a dicho acusado a sufrir la pena de CINCO MESES de cárcel, con las costas.''

Como puede verse, el precepto se refiere a casos de delitos graves *(felony)* y el homicidio involuntario no lo es a virtud de la enmienda de mayo 4, 1933 (Leyes de 1932–33, pág. 265) al artículo 204 del Código Penal que lo castiga. Dicho artículo como enmendado, lee:

"El homicidio voluntario se castigará con pena de presidio por un término máximo de diez (10) años. El homicidio involuntario se castigará con pena de cárcel por un término máximo de tres (3) años o multa máxima de tres mil (3,000) dólares, o ambas penas a la vez, a discreción de la corte. Será considerado como un delito menos grave a todos los efectos de la ley y las cortes de distrito de Puerto Rico tendrán jurisdicción exclusiva original en los casos de homicidio involuntario y el acusado tendrá el derecho de solicitar ser juzgado por tribunal de derecho o por jurado.''

Eso aparte de que lo ocurrido según los autos demuestra una renuncia implícita por parte del acusado asistido de su abogado a su derecho, en el caso de que lo hubiera tenido. La decisión de esta corte en el caso de *Pueblo* v. *Aquino,* 50 D.P.R. 41, que se invoca, no es, pues, aplicable.

Los motivos que la corte sentenciadora tuvo para negar el nuevo juicio, cuestión que se incluye en el tercer señalamiento de error y que debió ser objeto de un señalamiento separado, se hacen constar en su resolución como sigue:

"(1) Gran parte de la prueba que se ofrece para el nuevo juicio, sería acumulativa.

"(2) La prueba que se ofrece con respecto a que el interfecto era sordo, no es esencial al caso, pues la teoría del Pueblo que el Jurado creyó, fué que el acusado pasó indebidamente entre el caballo en que iba montado el interfecto y una guagua, y además, aun aceptando que tuviera algún alcance en la evidencia del caso, hubo alguna prueba negativa con respecto a defecto físico del interfecto.

"(3) Tampoco podríamos fundar la concesión de un nuevo juicio, en que parte de los testigos trabajaban con familiares del inter-

546

fecto, a no ser que se alegaren otros hechos para conectarlos con algún propósito de parcialidad o prejuicio.''

Hemos leído la larga argumentación contenida en el alegato del apelante y a nuestro juicio no destruye las conclusiones de la corte que quedan en su consecuencia en pie.

■ El cuarto señalamiento se formula así:

''La corte cometió error fundamental al dictar las instrucciones al Jurado, a base de un homicidio involuntario, cuando los hechos alegados es una infracción del artículo 328 del Código Penal, sobre el cual no se instruyó al Jurado; y cometió error gravísimo en aquella parte donde instruye al Jurado en el sentido de que el acusado pudo haber evitado el accidente, aun yendo a velocidad moderada, teniendo en cuenta que más adelante había una bifurcación de carreteras, y al otro lado una persona a caballo, cuando ésos son hechos a los que tenía que llegar el Jurado y no el Juez que los da por probados.''

Con respecto a la primera parte del señalamiento bastará decir que de conformidad con lo ya resuelto precisa concluir que las instrucciones de la corte sobre homicidio involuntario se ajustaron a los hechos y a la ley. Y con respecto a la segunda, estando contestes tanto la prueba del fiscal como la de la defensa en la descripción del sitio, no vemos que la corte cometiera error al referirse al mismo en la forma en que lo hizo.

■ Por el quinto y último señalamiento de error como sabemos se sostiene que el veredicto es contrario a la prueba.

Según el fiscal la prueba del Pueblo tendió a establecer ''que el día de los sucesos viajaba el acusado conduciendo un automóvil 'Pontiac' por la carretera y en dirección de Manatí a Arecibo; que en esa misma dirección viajaba a caballo el señor Pascual Bruno, por su derecha, caminando despacio (caminando por el 'pasillo' de la carretera); que el acusado venía a bastante velocidad, 'a todo escape' y que no tocó *klaxon;* que en la intersección de la carretera de Ciales a Manatí con la de Manatí a Arecibo, estaba una guagua que venía de Ciales, la cual se detuvo al llegar a dicho sitio; que de Arecibo venía un *truck,* que se había detenido, a su dere-

cha, antes de llegar a dicha intersección, porque esperaba que la guagua saliera para doblar por la carretera hacia Ciales; que estando tanto el *truck* como la guagua parados, y teniendo ésta parte del *bonete* en la carretera que conduce de Manatí a Arecibo, el acusado pasó por el espacio de carretera que quedaba entre la guagua y el caballo, que en esos momentos quedaba en la misma dirección de la guagua, sin dar aviso de alarma ni tocar *klaxon,* siendo dicho espacio un trecho muy pequeño para que pudiera pasar el carro del acusado, chocando entonces con el caballo y tumbando al jinete, quien sufrió la fractura del cráneo que le produjo la muerte.''

Y ''con sus testigos la defensa tendió a demostrar que el accidente ocurrió al tratar de cruzar la carretera el jinete en su caballo, que ambos iban en la misma dirección, que el acusado tocó *klaxon,* que iba a una velocidad moderada, que la guagua de que hablaban los testigos de El Pueblo no ocupaba ninguna parte de la carretera de Manatí a Arecibo, y que por consiguiente no estorbaba el tránsito por dicha carretera, y que el choque ocurrió al tratar de cruzar el jinete hacia el lado izquierdo. En todos los demás detalles, substancialmente, concuerda esta teoría con la de El Pueblo, tanto en la forma como el carro chocó con el caballo, como en cuanto a la descripción de las carreteras donde ocurrió el accidente.''

Hemos leído la transcripción de la evidencia y encontramos que a ella se ajusta la condensación del fiscal y la tendencia de una y otra prueba, la de cargo y la de descargo. Dirimido el conflicto por el jurado en favor de la de cargo, no puede sostenerse que se encuentre sin base el veredicto. La comisión del acto ilegal—violación de la ley de automóviles—imputada al acusado, quedó demostrada, y la muerte ocasionada por el acto demostrada fué también, de suerte que el veredicto se basa en la acusación, en la prueba y en la ley.

*Debe confirmarse la sentencia apelada.*