MILTON GONZÁLEZ ZAYAS, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. GERARDO CARREIRA MÁS, JUEZ, demandado; EL PUEBLO DE PUERTO RICO, interventor.

Número: O-70-105          Resuelto: 8 de octubre de 1971

*Luis A. Maldonado Soto,* abogado del peticionario; *Gilberto Gierbolini, Procurador General,* y *Cándita R. Orlandi, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Milton González compareció a la Sala de Carolina del Tribunal de Distrito con el propósito de servirle de fiador a dos personas acusadas de delito y a quienes se les había señalado una fianza de $1,000 en cada una de cinco causas. Para lograr su propósito simuló ser Juan Reyes Torres y con ese nombre firmó y juró las fianzas exigidas, en las cuales manifestó que era dueño de un inmueble, siendo todo falso.

Al descubrirse la falsedad se juraron cinco denuncias por el agente Negrón Ramos del Cuerpo de Investigaciones Criminales de la Policía contra Milton González, el 3 de julio de 1969, por falsa representación, ante la Sala de Carolina del Tribunal de Distrito. [1] El 24 de septiembre siguiente hizo alegación de culpabilidad en los cinco casos. La Corte de Distrito le impuso $1,000 de multa, $200 en cada caso ó 90 días de cárcel. Satisfizo las multas impuestas. El 16 de octubre de 1969 el fiscal de San Juan radicó acusación contra Milton González por cinco delitos de perjurio que acumuló en un solo pliego acusatorio. [2] Al dorso de la acusación un

[1] Una de las cinco denuncias se copia a continuación:

"El referido acusado Milton González Zayas, allí y entonces, ilegal, voluntaria, maliciosamente, a sabiendas y con la intención criminal de defraudar como al efecto defraudó valiéndose de falsas y fraudulentas simulaciones, al Tribunal de Distrito de Carolina en la fecha, hora y sitio arriba indicado en una Orden de Fianza con la intención de fiar al señor Pedro Pérez Pérez, quien había sido acusado por el Artículo 419 del Código Penal de Puerto Rico el día 22 de enero de 1969, con fianza de $1,000, y lo hizo simulando ser y haciéndose pasar por el Sr. Juan Reyes Torres y bajo tal carácter usurpado, solicitó, obtuvo y prestó la fianza indicada, defraudando de este modo al Tribunal de Distrito de Carolina."

[2] Uno de los cinco cargos que contiene la acusación lee así:

"El referido acusado MILTON GONZÁLEZ ZAYAS, allá en o para el 13 de mayo de 1969, y en Carolina, Puerto Rico, que forma parte de la jurisdicción del Tribunal Superior de Puerto Rico, Sala de San Juan, ilegal, voluntaria, maliciosa y criminalmente, compareció ante la Hon. Juez de Distrito Ana D. Sánchez de Morales, quien es un funcionario del Tribunal General de Justicia autorizada a tomar juramentos, *certificó, firmó y juró como cierta ser la persona de Juan Reyes Torres y ser dueño de un bien inmueble* valorado en $37,000.00 situado en la Ave. Roosevelt #1121 de

agente del Cuerpo de Investigaciones de la Policía de Puerto Rico aparece como uno de los testigos de cargo.

Al dar comienzo la vista del caso de perjurio la defensa plantea al Tribunal "que por estos mismos hechos el acusado fue ya juzgado." Luego de las partes someter extensos memorándums, el juez que presidió la vista declaró sin lugar el planteamiento de la defensa. Acordamos revisar esa resolución.

No estamos ante el caso usual de exposición anterior protegido por la garantía constitucional enmarcada en la Sec. 11 de la Carta de Derechos.(³) Milton González no se declaró culpable del mismo delito por el cual se le acusó ante el Tribunal Superior. Se declaró culpable de falsa representación y ahora se le está acusando de perjurio. Pero hay una disposición en el Código Penal aplicable a la situación de hechos que este caso presenta. El Art. 44 (33 L.P.R.A. sec. 90) dispone así:

"Un acto u omisión penable de distintos modos por distintas disposiciones de este Código, podrá castigarse con arreglo a cualquiera de dichas disposiciones, pero en ningún caso bajo más de una; la absolución o convicción y sentencia bajo alguna de ellas, impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás."

██ La disposición que acabamos de transcribir vino a nuestro ordenamiento del Estado de California. Corresponde al Art. 654 del Código Penal de dicho Estado.(⁴) Esta dispo-

---

Santurce, *conociendo tanto* la falsedad de que no poseía dicho bien inmueble y de que no era *el verdadero Juan Reyes Torres, con el propósito de que dicho funcionario autorizara una fianza* a favor de Pedro Pérez Pérez, acusado en una infracción al Art. 419 del Código Penal de P.R., incurriendo de esta forma en el delito de Perjurio tal como se define en el Artículo 117 del Código Penal." (Bastardillas nuestras.)

(³) Dispone así la Sec. 11:

"     .     .     .     .     .     .     .

Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito."

(⁴) Lee así el Art. 654 de California:

"ACTS MADE PUNISHABLE BY DIFFERENT PROVISIONS OF THE CODE. An act or omission which is made punishable in different

sición tiene un alcance mayor que el de proteger a un acusado de la doble exposición que veda la Constitución del Estado Libre Asociado, sino que lo protege de que por un solo acto punible se le castigue más de una vez. No debe ser confundida con la garantía constitucional. *People* v. *Tideman*, 370 P.2d 1007, 1009 (Cal. 1962). Por eso el artículo establece que si se ha incurrido en "un solo acto u omisión penable" no podrá castigársele por más de un delito; ni procesársele nuevamente una vez absuelto o convicto y sentenciado por cualquiera de los delitos. Así se evita que a un acusado por los mismos hechos pueda imponérsele una pena que en efecto sea excesiva, sin que necesariamente resulte *cruel e inusitada*, y se evita además que pueda hostigársele y perseguírsele, acusándolo de distintos delitos, luego de haber sido ya procesado por uno, en circunstancias en que no procede la defensa de exposición anterior por tratarse de delitos distintos. *Kellett* v. *Superior Court*, 409 P.2d 206 (1966); *Neal* v. *State of California*, 357 P.2d 839 (1961); *People* v. *Hartfield*, 90 Cal. Rptr. 274, 277 (1970); Nota, 2 San Diego L. Rev. 86 (1965); *Applying Section 654 of the Penal Code*, 32 Calif. L. Rev. 50 (1958); Kahn, *Double Jeopardy, Multiple Prosecution and Multiple Punishment: A Comparative Analysis*, 50 Calif. L. Rev. 853 (1962).

■ Es necesario apuntar la diferencia existente entre la defensa de exposición anterior que garantiza la Constitución y lo estatuido en la segunda cláusula del Art. 44. La defensa de exposición anterior requiere que la segunda acusación sea por el mismo delito, pero no requiere para su aplicación una absolución o una condena. Basta que haya estado expuesto.

ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. In the cases specified in Sections 648, 667, and 668, the punishments therein prescribed must be substituted for those prescribed for a first offense, if the previous conviction is charged in the indictment and found by the jury."

El Art. 44 exige que el caso anterior haya terminado, bien por absolución o por convicción y sentencia.

La situación que trata de proteger el Art. 44 no presentaba problema fundamental alguno cuando se redactó la enmienda a la Constitución de los Estados Unidos que proscribe la doble exposición por el mismo delito. En aquel tiempo existían relativamente pocos delitos, claros y definidos. Las acusaciones eran sencillas y precisas. Según pasaban los años y la sociedad rural se convertía en una sociedad urbana e industrializada se multiplicaron los delitos y los estatutos penales se hicieron más abarcadores y técnicos, pudiendo un solo acto violar varias disposiciones penales. *Ashe* v. *Swenson*, 397 U.S. 436 (1970), Nota, 39 Cincinnati L. Rev. 590 (1970). Esto podría resultar injusto y opresivo para el ciudadano. Los tribunales fueron desarrollando varias doctrinas para proteger al acusado del rigor excesivo de la ley. Ver el abarcador estudio sobre esta cuestión en Lugar, *Criminal Law Double Jeopardy and Res Judicata*, 39 Iowa L. Rev. 317 (1964); Cohen, *Deadly Weapons Act*, 31 U. Pitt. L. Rev. 476 (1970). Una de las doctrinas adoptadas es la del impedimento colateral por sentencia (*collateral estoppel by judgment*).

█ El Tribunal Supremo de los Estados Unidos en *Ashe* v. *Swenson*, 397 U.S. 436 (1970) hace referencia a la práctica desarrollada por los fiscales de imputar más de un delito por un solo acto delictivo y al hecho de que los tribunales federales hace más de cincuenta años aplicaron la doctrina de impedimento colateral (*collateral estoppel*) para proteger al acusado. A ese efecto consignó en el escolio 10 a la pág. 445:

"Es cierto, como expresó este Tribunal en *Hoag* v. *New Jersey, supra,* que nunca hemos sostenido específicamente que la doctrina de impedimento colateral es una exigencia constitucional. Hasta hace quizás un siglo, pocas situaciones surgieron que requerían su aplicación, ya que, bajo la ley común y bajo

antiguos estatutos criminales federales las categorías de delitos eran relativamente pocas y específicas. Un solo curso de conducta criminal probablemente producía un solo delito. Véase *Comment, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee,* 65 Yale L.J. 339, 342. En tiempos más recientes, con el advenimiento de la pormenorización en la redacción y la extraordinaria multiplicación de delitos estatutarios que coinciden en parte y se relacionan entre sí, se hizo posible a los fiscales el producir una sorprendente y numerosa serie de delitos derivados de una sola transacción criminal. Véase Note, *Double Jeopardy and the Multiple-Count Indictment,* 57 Yale L.J. 132, 133. A medida que el número de delitos estatutarios se multiplicaba, la posibilidad de multiplicidad de acusaciones injustas y abusivas por una misma alegada conducta criminal se pronunció más. Comment, *Twice in Jeopardy,* 75 Yale L.J. 262, 279–280; Note, *Double Jeopardy and the Concept of Identity of Offenses,* 7 Brooklyn L. Rev. 79, 82. Las cortes federales pronto reconocieron la necesidad de evitar tales abusos por medio de la doctrina de impedimento colateral y ésta se convirtió en una protección firmemente establecida en la ley federal. Véase n. 6, supra . . . ."

■ Tan fundamental consideró el tribunal la aplicación de esta doctrina que en *Ashe* v. *Swenson,* la incorporó a la garantía consignada en la Enmienda V de no ser expuesto dos veces por el mismo delito y la aplica a los estados a través de la Enmienda XIV. Ver los comentarios sobre *Ashe* v. *Swenson* en 50 B.U.L. Rev. 604 (1970); 39 Cincinnati L. Rev. 590 (1970); 71 Colum. L. Rev. 321 (1971); 84 Harv. L. Rev. 140 (1970); 69 Mich. L. Rev. 762 (1971); 49 N.C.L. Rev. 351 (1971); 49 Texas L. Rev. 148 (1970); 7 Tulsa L. Rev. 68 (1971); 39 UMKC L. Rev. 225 (1971).

Procede aclarar que este Tribunal no ha emitido dictamen alguno sobre el Art. 44 que pueda servir de norma para su interpretación. La disposición que estudiamos se ha mencionado insignificativamente en los casos de *Pueblo* v. *Rivera Ramos,* 88 D.P.R. 612 (1963); *Pueblo* v. *Fonseca,* 79 D.P.R. 36 (1956); *Pueblo* v. *Pérez,* 58 D.P.R. 539 (1941); *Pueblo* v.

*Padilla,* 56 D.P.R. 144 (1940) ; *Pueblo* v. *Cortés,* 56 D.P.R. 164 (1940) ; *Pueblo* v. *Rodríguez,* 12 D.P.R. 212 (1907) ; *Ex Parte Torres,* 11 D.P.R. 101 (1906) ; *Pueblo* v. *Laborde, et al.,* 9 D.P.R. 447 (1905) ; *Ex Parte Correa,* 8 D.P.R. 251 (1905). En *Pueblo* v. *Rodríguez,* supra, se dispuso sin un estudio adecuado, un planteamiento sobre la aplicación del referido artículo. En *Pueblo* v. *Fonseca,* supra, al resolver el planteamiento sobre la aplicabilidad del Art. 44 en relación con las distintas violaciones de la Ley de Armas, expresamos lo siguiente:

"El apelante, invocando el art. 44 del Código Penal sostiene que tanto el art. 8 que prohíbe la portación de un arma de fuego cargada, como el art. 32 que prohíbe el que se dispare un arma, castigan el mismo acto, esto es, la portación de un arma de fuego cargada.

El art. 44 ya citado no se aplica en este caso. La portación ilegal de un arma de fuego, cargada, es un delito en el que se incurre independientemente de que se dispare o no el arma. El acto de disparar ilegalmente es un delito en el que se incurre independientemente de que la persona que lo ejecuta, en las circunstancias indicadas en el art. 32, tenga o no licencia para portar el arma. Son por lo tanto, violaciones de ley distintas y separadas. Cf. *Pueblo* v. *Albizu,* 77 D.P.R. 896, 907." (5)

■ La cuestión principal que la interpretación del Art. 44 plantea es el alcance del concepto "un solo acto u omisión."

Está aceptado por la jurisprudencia del estado de origen, que el concepto "acto u omisión" a que se refiere el artículo no debe circunscribirse al sentido literal de la expresión, esto es, no necesariamente es el acto que denota una actuación específica sino que puede ser un curso de conducta con un objetivo y propósito determinado. Tampoco está limitada su aplicabilidad a delitos que están incluidos o son parte o

---

(5) Aunque no se consideró en forma amplia el alcance del Art. 44, es evidente que la aplicación que se hizo de sus disposiciones es correcta ya que no se trataba de un solo acto penable por más de un estatuto, sino que se trataba de dos actos penables distintos: uno, portar un arma de fuego cargada sin estar autorizado; el otro, disparar un arma de fuego.

ingrediente de otros. *Ex Parte Hayes*, 451 P.2d 430 (1969); *In Re McGreen*, 427 P.2d 161 (1967); *Neal* v. *California*, 357 P.2d 839 (1960); *People* v. *Bauer*, 461 P.2d 637 (1969); *People* v. *Jackson*, 140 N.E.2d 282 (N.Y. 1957); *People* v. *Kelly*, 270 N.Y.S.2d 127 (1966); *People* v. *Repola*, 117 N.Y.S.2d 283 (1952); *People* v. *Baker*, 278 N.Y.S.2d 309 (1967); *People* v. *Christman*, 244 N.E. 703 (N.Y. 1969); ver además *State* v. *Balley*, 427 P.2d 125 (Ariz. 1967) y *State* v. *Vallejos*, 358 P.2d 178 (Ariz. 1960).

En *People* v. *Bauer*, supra, el Tribunal Supremo de California resume la jurisprudencia de aquel estado sobre lo que se entiende por "un solo acto u omisión" a los efectos de la aplicación de la disposición estatutaria que estamos considerando. A ese efecto expresó:

"Se ha establecido firmemente que la prohibición contra el doble castigo no está limitada a delitos necesariamente incluidos en otro o a delitos idénticos o a casos donde ocurre, en el sentido corriente, un solo acto.

. . . . . . . .

La prohibición contra el doble castigo de la sección 654 es aplicable donde existe un curso de conducta que infringe más de un estatuto y comprende una transacción indivisible castigable bajo más de un estatuto dentro del significado de la sección 654. La divisibilidad de un curso de conducta depende de la intención y propósito del actor, y si todos los delitos son incidentales a un propósito, puede castigarse al acusado por cualquiera de ellos, pero no por más de uno."

Ver *Neal* v. *State*, 357 P.2d 839 (Cal. 1960). Y ver específicamente *In Re Hayes*, 451 P.2d 430 (Cal. 1969) donde se considera la aplicación de estas normas.

■ En California se ha dejado sentado que siendo el propósito de la disposición que estamos considerando proteger al ciudadano contra el hostigamiento y persecución irrazonable del gobierno, ésta no puede ser utilizada para frustrar la administración de la justicia. *In Re Hayes*, supra. En *People* v. *Hartfield*, 90 Cal. Rptr. 274 (1970) el acusado,

estando pendiente la vista del caso grave, compareció al tribunal inferior precipitadamente y se declaró culpable del delito menos grave. El tribunal resolvió que en esas circunstancias no le protegía el Art. 654. Y en *In Re Ford*, 424 P.2d 681 (Cal. 1967) se resolvió que la disposición estatutaria no se aplicaba cuando la conducta proscrita por la ley afecta a más de una persona. Ver además *People* v. *Taylor*, 93 Cal. Rptr. 257 (Cal. 1971).

Es evidente la tendencia de los tribunales estatales en extender la protección que el Art. 44 establece aun sin existir una disposición estatutaria como la nuestra. El Tribunal Supremo de Alaska, en una muy bien razonada y convincente opinión, en *Whitton* v. *State*, 479 P.2d 302 (1970), concluye que la disposición de la Constitución estatal que protege contra la doble exposición por un mismo delito, protege también al ciudadano de múltiples sentencias por un solo acto u omisión. A igual conclusión llegan las cortes de Hawaii y Oklahoma en *State* v. *Ahuna*, 474 P.2d 704 (Hawaii 1970) y *Hilderbrand* v. *Mills*, 476 P.2d 375 (Okla. 1970). Ver además: *Statutory Implementation of Double Jeopardy Clause: New Life for a Moribund Constitutional Guarantee*, 65 Yale L.J. 339 (1956); Nota: *Consecutive Sentences in Single Prosecution Judicial Multiplication of Statutory Penalties*, 67 Yale L. Rev. 916 (1958); Grant, *The Lanza Rule of Successive Prosecutions*, 32 Colum. L. Rev. 1309, 1323 (1932); Kirchheimer, *The Act, the Offense and Double Jeopardy*, 58 Yale L. Rev. 513 (1949); Comment: *Twice in Jeopardy*, 75 Yale L. Rev. 262 (1965); Lugar, *Criminal Law, Double Jeopardy and Res Judicata*, 39 Iowa L. Rev. 317 (1964); *The Protection from Multiple Trials*, 11 Stan. L. Rev. 735 (1959).

Antes de considerar los hechos de este caso debe dejarse establecido lo expuesto en *People* v. *Branch*, 260 P.2d 27 (1957) al efecto de que: ". . . es indispensable, para poder imponer castigos separados, que haya evidencia de actos

separados y divisibles que no sean incidentales uno al otro. Al determinar esta cuestión los tribunales se han negado a pormenorizar la evidencia en un intento para encontrar delitos separados, sino que, por el contrario, han sostenido que debe hacerse un amplio enfoque de la transacción." Esta norma fue adoptada por el Tribunal Supremo de Arizona donde existe una disposición similar.([6]) *State* v. *Vallejos*, 358 P.2d 178 (1960). Y ver además *State* v. *Sulen,* 485 P.2d 826 (Ariz. 1971) y *State* v. *Mendoza,* 481 P.2d 844 (Ariz. 1971).

Expuesta la ley aplicable, procede considerar los hechos específicos del presente caso. Un individuo se presenta a la Sala de Carolina del Tribunal de Distrito para servir de fiador a dos personas. Manifiesta que es Juan Reyes Torres y procede a firmar y jurar la fianza. Como se expresa en la denuncia por falsa representación: "simulando ser y haciéndose pasar por el Sr. Juan Reyes Torres y bajo tal carácter usurpado, solicitó, obtuvo y prestó una fianza" y en la de perjurio: "Compareció ante la Hon. Juez . . . certificó, firmó y juró como cierto ser la persona de Juan Reyes y ser dueño de un bien inmueble . . . conociendo tanto la falsedad de que no poseía dicho bien inmueble y que no era el verdadero Juan Reyes Torres con el propósito de que dicho funcionario autorizara una fianza."

Como se observará de la lectura de los hechos esenciales alegados en la denuncia por falsa representación y en la acusación por perjurio, se le imputa un solo e indivisible hecho esencial: simulando ser Juan Reyes Torres "solicitó", "firmó", "juró", "obtuvo" y "prestó" una fianza. Todos estos vocablos que aparecen en los pliegos acusatorios describen un solo curso de conducta con el propósito único de obtener ilegalmente la libertad de dos personas. Es una sola transacción. Y recuérdese, según se expresó en *Branch,* supra, que al apli-

---

([6]) Arizona Penal Code 13-1641.

car el Art. 44 no deben desmenuzarse los hechos para tratar de establecer delitos separados. Si así se hiciera se frustraría el propósito que dio vida al Art. 44: evitar que se persiga irrazonablemente al ciudadano radicándose acusaciones por delitos distintos que tienen su origen en un solo acto u omisión es el propósito del ameritado artículo; impedir que sea convicto de violar varias disposiciones del Código con una serie de penas que podrían resultar excesivas. El Estado tenía en sus manos acusar al peticionario de perjurio (delito grave) o de falsa representación. Pero prefirió que un agente del C.I.C. radicara primero la denuncia por falsa representación. Esperó que terminara el proceso por el delito menor para entonces radicar la acusación por el delito grave. Esto no lo permite el Art. 44.

*Por las razones expuestas se anulará la resolución recurrida y se dictará otra ordenando el archivo de la acusación por perjurio.*

El Juez Presidente Señor Negrón Fernández no intervino.