EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CONFESOR HERNÁNDEZ DE JESÚS, acusado y apelante.

*Número:* CR-76-210        *Resuelto:* 31 de mayo de 1977

*Rafael S. Fuentes Rivera,* abogado del apelante; *Roberto Armstrong, Jr., Procurador General Interino,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo.

### SENTENCIA

El Ministerio Público acusó al apelante de violar la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2101 y ss., por poseer, transportar y ocultar y distribuir marihuana. Convicto el apelante, se le sentenció a cumplir de cinco a siete años de presidio por el delito de posesión, igual condena por el delito de transportación y ocultación y de cinco a nueve años por el cargo de distribución. Se dispuso que las penas se cumplieran concurrentemente en libertad a prueba.

La prueba de cargo consistió del testimonio de un agente encubierto de la policía. Para el 27 de marzo de 1974 dicho agente visitó a un antiguo conocido, Miguel Tollens Aquino, coacusado en esta causa, a quien había observado anteriormente junto a otras personas relacionadas con el tráfico de drogas. Le preguntó a Tollens si tenía marihuana. Le respondió que no, pero que podía llevarlo adonde un amigo. Fueron a verlo, estacionaron el automóvil cerca de un negocio y Tollens le dijo al agente que aguardase mientras él hablaba con su amigo. Regresó poco después y le explicó al agente que el acusado podía venderle una cuarta de marihuana por ciento diez dólares. El agente aceptó y luego salió el apelante, sacó de la cintura una bolsa y la dejó sobre una baranda cerca

del negocio. Tollens recogió el paquete de marihuana, se lo entregó al agente y éste pagó la suma convenida.

El apelante sostiene que la prueba desfilada es insuficiente para justificar su convicción. Hemos examinado la transcripción de la prueba, la que añade detalles al resumen que antecede, y hallamos que la misma cumple con los criterios que expusimos en *Pueblo* v. *González del Valle*, 102 D.P.R. 374, 378 (1974) y *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704, 708 (1966). Véase: Valldejuly Pérez, I. R., *El agente encubierto y el Tribunal Supremo de Puerto Rico*, 44 Rev. Jur. U.P.R. 141, 145–154 (1975).

Otros planteamientos del apelante en torno a este único señalamiento de error son igualmente inmeritorios.

*Se confirma la sentencia apelada.*

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Asociado Señor Rigau no intervino. El Juez Presidente, Señor Trías Monge, disiente en opinión separada a la cual se unen los Señores Jueces Asociados Díaz Cruz e Irizarry Yunqué.

(Fdo.) Ernesto L. Chiesa

*Secretario*

—O—

Opinión disidente emitida por el Juez Presidente, Señor Trías Monge, a la que se unen los Jueces Asociados, Señores Díaz Cruz e Irizarry Yunqué.

San Juan, Puerto Rico, a 31 de mayo de 1977

Los hechos se expresan en la sentencia del Tribunal. Existe una cuestión en este caso, no discutida por las partes, que merece consideración ulterior. ¿Fue válida en las circunstancias descritas la imposición de tres condenas separadas? El análisis de esta cuestión exige adentrarse en la llamada teoría del concurso.

Antes de proceder importa resolver si este Tribunal puede considerar el asunto *motu proprio*. El Art. 44 del Código Penal de 1937, 33 L.P.R.A. sec. 90, vigente a la fecha de los hechos, dispone, en parte, que "Un acto u omisión penable de distintos modos por distintas disposiciones de este Código, podrá castigarse con arreglo a cualquiera de dichas disposiciones, pero en ningún caso bajo más de una. . . ." [1] Dicho Art. 44 es básicamente una traducción del Art. 654 del Código Penal de California. [2] En dicho estado se ha decidido repetidamente que los tribunales pueden y deben examinar si se ha cumplido el vital mandato que las referidas disposiciones contienen, se haya o no planteado esta cuestión en etapa alguna del proceso. *People* v. *Isenor*, 94 Cal. Rptr. 746, 754 (App. 1971); *People* v. *Solo*, 86 Cal. Rptr. 829, 834 (App. 1970); *People* v. *Richardson*, 85 Cal. Rptr. 607, 613 (1970); *People* v. *Jackson*, 331 P.2d 218, 223 (App. 1958). Hallamos persuasiva la jurisprudencia de California sobre este extremo y consideramos que los tribunales tienen la obligación, aunque haya mediado inacción de las partes, de velar por el debido cumplimiento del referido principio de nuestro ordenamiento penal.

La teoría del concurso es de antigua estirpe. Se le ha analizado extensamente en diversos sistemas de derecho. La literatura romanogermánica sobre el tema es abundantísima. Jiménez de Asúa, L., *Tratado de Derecho Penal*, Tomo II, 2ª ed., Buenos Aires, 1950, págs. 534–535. El propio Código Penal de 1879 para las Islas de Cuba y Puerto Rico trataba en modo más amplio la teoría del concurso que nuestros códigos penales posteriores, estableciendo normas para situacio-

---

[1] Con leves cambios de estilo, esta disposición se incorporó al Art. 63 del Código Penal de 1974, 33 L.P.R.A. sec. 3321.

[2] La versión en inglés de este artículo, West's Anno. Cal. Codes, Penal, sec. 654, promulgado originalmente en 1872, expresa:

"An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

nes no consideradas actualmente.[3] Su Art. 88 guardaba estrecha relación teórica con la legislación californiana que luego se adoptó aquí. Dicho artículo disponía que cuando "un solo hecho constituya dos o más delitos, o cuando el uno de ellos sea medio necesario para cometer el otro . . . sólo se impondrá la pena correspondiente al delito más grave, aplicándola en su grado máximo."[4] El artículo anteriormente citado del Código Penal de California muestra de hecho la huella del pensamiento civilista. Los conceptos de éste son de decidido valor para el análisis del enfoque californiano,[5] si bien su terminología y muchos conceptos difieren considerablemente.

El Art. 654 del Código Penal de California ha sufrido cambios de interpretación extensos. Originalmente se entendía que la prohibición de imponer penas múltiples se limitaba a cuando un delito está comprendido dentro de otro, o cuando para cometer éste hay necesariamente que cometer aquél. McKissack, *Recent Developments in the Criminal Law: The*

---

[3] Véanse los Arts. 86 y ss.

[4] Orozco y Arascot, A: *Código Penal de 1879 para las Islas de Cuba y Puerto Rico, Concordado*, Habana, 1879, pág. 19. Esta disposición se remonta al Art. 78 del Código de 1850 y a los Arts. 113 y 114 del Código de 1823.

[5] Muy pocos estados norteamericanos, entre ellos Montana, Nueva York, Minnesota, Idaho y Dakota del Norte tienen estatutos similares al de California y el nuestro. El tratamiento federal del problema es totalmente distinto. *Blockburger* v. *United States*, 284 U.S. 299 (1932); *Gore* v. *United States*, 357 U.S. 386 (1958); *Harris* v. *United States*, 359 U.S. 19 (1959); *Yancy* v. *United States*, 362 U.S. 389 (1960). Comment, *Multiple Offenses and Multiple Penalties under the Federal Narcotics Law*, 28 U. Chi. L. Rev. 308 (1961). El enfoque representado por *Blockburger* y su progenie ha sido criticado con severidad, Caraway, *Sentencing Reform in Multiple Offense Cases: Judicial and Legislative Avenues*, 7 Conn. L. Rev. 257 (1975); Comment, *Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties*, 67 Yale L.J. 916, 924 *et seq.* (1958). El propuesto Código Penal federal rechaza la decisión de *Blockburger* de permitir castigos múltiples en ciertas situaciones donde éstos se rechazarían en California, Caraway, *op. cit.*, 282–283. El Código Penal Modelo preparado por el Instituto Americano del Derecho se aparta también de la solución federal, haciéndose claro eco en muchos particulares de teorías civilistas. Silving, Helen, *Criminal Justice*, 1971, vol. 1, págs. 519–520.

*Included Offense Doctrine in California,* 10 U.C.L.A. L. Rev. 870, 883–887 (1963); Note, *Double Jeopardy v. Double Punishment—Confusion in California,* 2 San Diego L. Rev. 86, 94 (1965). Hace años que esta primitiva doctrina cesó de ser ley en California. *People* v. *Kehoe,* 204 P.2d 321, 322, *cert.* denegado, 338 U.S. 834 (1949); *People* v. *Knowles,* 217 P.2d 1, 8, *cert.* denegado, 340 U.S. 879 (1950). Según se expone en estas decisiones y se desprende de la propia letra del estatuto, lo determinante es la unicidad del acto. A tal conclusión se ha llegado también en Nueva York y Minnesota bajo leyes análogas. *People* v. *Repola,* 117 N.Y.S.2d 283, 288 (1953), confirmado, 113 N.E.2d 42; *People* v. *Savarese,* 114 N.Y.S.2d 816–835, 836 (County Ct. 1952); *State* v. *Prudhomme,* 228 N.W.2d 243 (Minn. 1975); *State* v. *Krampotich,* 163 N.W.2d 772 (Minn. 1968).

Como resultado de este análisis se descartó en California la llamada doctrina de Blockburger [6] o criterio de la misma prueba. Véase la opinión concurrente en *Pueblo* v. *Braun,* 105 D.P.R. 890 (1977). Bajo esta doctrina, si la misma prueba basta para condenar por dos o más delitos, existe en realidad un solo delito, mas si un delito exige algún elemento de prueba distinto a la requerida para la comisión de otro, se trata de delitos múltiples, condenables separadamente. Se advertirá que esta doctrina es relevante únicamente si el centro de la escena lo ocupa el esfuerzo por determinar la singularidad o pluralidad de delitos. Tan pronto se resolvió en California que el factor preeminente es la unicidad del acto, se abandonó a *Blockburger.* [7]

Estos desarrollos culminaron en el caso clave de *Neal* v. *State,* 357 P.2d 839 (Cal. 1960). *Neal* establece que el tér-

---

[6] Véanse: *Blockburger* v. *United States,* 284 U.S. 299 (1932); Comment, *The Protection from Multiple Trials,* 11 Stan. L. Rev. 735, 743–745 (1959).

[7] Para la historia de este desarrollo hasta 1959, antes de la decisión de *Neal* v. *State,* 357 P.2d 839 (Cal. 1960), véase el artículo citado en la nota anterior.

mino "acto", según se emplea en el Art. 654 del Código Penal de California, comprende no sólo un acto físico único sino también, en determinadas circunstancias, un curso de acción. Expresó a continuación el Juez Traynor la norma de *Neal:*

"El hecho de si un curso de conducta es divisible y en consecuencia produce más de un acto a la luz del artículo 654 depende de la intención y el objetivo del autor. Si todos los delitos sirven un solo propósito, puede castigarse al acusado por cualquiera de ellos, pero no por más de uno." 357 P.2d 839, 843–844. (Traducción nuestra.)

La doctrina de *Neal* no opera, según se aclara en el propio caso y en decisiones posteriores, cuando el acto genera más de una lesión.[8] *People* v. *Braun,* 106 Cal. Rptr. 56, 71–72 (App. 1973).

A pesar de críticas que se le han formulado, Schneider, *Penal Code Section 654: The Prosecutor's Dilemma,* 17 Hastings L.J. 53 (1965); McKissack, *Recent Developments in the Criminal Law: The Included Offense in California,* 10 U.C.L.A. L. Rev. 870, 886–887 (1963), la norma de *Neal* goza hoy de buena salud. *In re Adams,* 536 P.2d 473, 476 (Cal. 1975); *People* v. *Bauer,* 461 P.2d 637, 642 (Cal. 1969), *cert.* denegado, 400 U.S. 927; *People* v. *Bailey,* 113 Cal. Rptr. 514, 518 (App. 1974).

En una etapa del pensamiento anterior a *Neal,* sin embargo, y con más razón después de *Neal,* la regla en California ha sido por largo tiempo que en los casos usuales de violación a las leyes sobre sustancias controladas, el delito de posesión está incluido en el de transportación y ambos en el de venta. Así se resolvió en *People* v. *Clemett,* 280 P. 681 (1929), en que la prueba de posesión y transportación desfilada fue únicamente la incidental a la venta, y en muchos

---

[8] En *Neal,* el acusado intentó asesinar a un matrimonio, incendiando su dormitorio y causándoles graves quemaduras a ambos. El Tribunal anuló la condena que se le impuso por incendio malicioso, pero validó su castigo por dos cargos separados de intento para cometer asesinato.

casos posteriores. Véanse: *People* v. *Roberts*, 254 P.2d 501, 505 (1953) (opinión unánime emitida por el autor de la opinión disidente en *Neal*); *People* v. *Francis*, 450 P.2d 591, 595–596 (1969); *People* v. *Solo*, 86 Cal. Rptr. 829, 834 (App. 1970); *People* v. *Richardson*, 85 Cal. Rptr. 607, 613 (App. 1970).

En *González* v. *Tribunal Superior*, 100 D.P.R. 136, 143–144 (1971), adoptamos la norma de *Neal*. Allí dijimos:

"Está aceptado por la jurisprudencia del estado de origen, que el concepto 'acto u omisión' a que se refiere el artículo no debe circunscribirse al sentido literal de la expresión, esto es, no necesariamente es el acto que denota una actuación específica sino que puede ser un curso de conducta con un objetivo y propósito determinado. Tampoco está limitada su aplicabilidad a delitos que están incluidos o son parte o ingrediente de otros."

Más adelante en dicha opinión nos referimos a las palabras ya citadas del Juez Traynor en *Neal*.

Bastaría lo expresado para la anulación en este caso de las sentencias impuestas por los delitos de poseer y de transportar y ocultar marihuana. Ello procede aun bajo la teoría de *Clemett*. La prueba presentada aquí para sostener las condenas por dichos dos delitos fue la necesariamente incidental para demostrar la venta. Bajo *González*, que representa un enfoque más avanzado, se llega también a la misma conclusión. El autor perseguía claramente un solo objetivo: la venta al confidente. Se violó en consecuencia el Art. 44 del Código Penal de 1937, por lo que conforme a la doctrina prevaleciente, deben anularse las penas impuestas, mas no las convicciones, por los dos delitos menores y validar la condena por la distribución de marihuana. *In re Adams*, supra; *People* v. *Díaz*, 427 P.2d 505, 508 (1967); *In re McGrew*, 427 P.2d 161, 163 (1967); *In re Ponce*, 420 P.2d 224, 225–226 (1966), *cert.* denegado, 386 U.S. 1012; [9] *People* v.

---

[9] Según los casos citados, el hecho de que se impusieran penas concurrentes no salva la prohibición contra castigos múltiples. Véase además *People* v. *Bailey*, 113 Cal. Rptr. 514 (App. 1974).

110

*McFarland*, 376 P.2d 449 (1962); *People* v. *Jones*, 27 Cal. Rptr. 429 (1963). Comment, *Double Jeopardy v. Double Punishment—Confusion in California*, 2 San Diego L. Rev. 86, 97 (1965).

La interpretación efectuada hasta ahora del Art. 44 hace innecesaria la consideración en términos constitucionales del resultado de imponer múltiples penas por el mismo acto. En *González* señalamos ya, no obstante, la tendencia existente en varios estados desprovistos de legislación comparable a la nuestra de resolver que es anticonstitucional la imposición de múltiples sentencias por un solo acto u omisión. *Whitton* v. *State*, 479 P.2d 302 (Alaska 1970); *State* v. *Ahuna*, 474 P.2d 704 (Hawaii 1970); *Heldenbrand* v. *Mills*, 476 P.2d 375 (Okla. 1970).

Si bien lo anterior sería aparentemente suficiente para la decisión del caso, debemos discutir brevemente algunos aspectos de la teoría del concurso en los derechos romanogermánicos, ya que dicho ejercicio nos lleva a una elaboración ulterior de la doctrina de *González*. Corresponde emprender esta labor, en vista de que dichos derechos constituyen la base en este campo de la legislación californiana y de la nuestra.

Se distingue en los derechos romanogermánicos entre el concurso ideal y el real (muchos autores diferencian además entre concurso o conflicto de delitos, penas y leyes). Existe usualmente el conflicto ideal cuando con un solo pensamiento criminoso y un solo acto se ocasionan diversas violaciones jurídicas. El concurso real, el verdadero *concursus delictuorum*, se da generalmente cuando el mismo autor realiza varias acciones encaminadas a fines distintos y que ocasionan infracciones totalmente independientes las unas de las otras. Puig Peña, *Derecho Penal*, 5ª ed., Tomo II, vol. 2º, Barcelona, 1959, págs. 307 y 310; Silving, Helen, *Criminal Justice*, 1971, vol. 1, pág. 516 *et seq.* El caso de autos representa un ejemplo de concurso ideal.

La determinación de la unidad o pluralidad de los actos

es vital para precisar la naturaleza del concurso y activar mandatos como el que encierra el Art. 44. Los criterios utilizados en *Neal* para realizar dicha determinación son principalmente, como hemos visto, de orden fáctico. En los derechos romanogermánicos se va más allá. Se atiende en éstos no sólo al propósito y plan del autor, y a veces al resultado, sino también al fenómeno jurídico. Maurach, *Tratado de Derecho Penal*, trad. del alemán, Barcelona, 1962, págs. 415–420. En el caso de autos lo que existió fue una pluralidad de acciones convergentes a un mismo acontecimiento antijurídico. Puig Peña, *op. cit.*, 300 *et seq.* El hecho de que dicho acontecimiento representó la infracción de varias disposiciones penales es irrelevante, ya que éstas están íntimamente relacionadas entre sí.

Respecto a la unicidad del acto se postula, como en *Neal*, que diversos procesos dotados de un mismo sentido o encaminados a un mismo propósito pueden soldarse en unidades indivisibles de acción. Ello no ocurre tan solo, como en *Neal*, cuando se trata de un curso de conducta dictado por un solo plan. En los derechos romanogermánicos caben dentro del concepto de un solo acto, entre otros, los delitos permanentes, los continuados y los progresivos. En el caso presente nos hallamos en esencia ante infracciones de naturaleza progresiva. Se produce este género de infracción cuando se consuman en etapas sucesivas diversos delitos, con tan estrecho ligamen causal entre cada estadio que el de rango mayor absorbe las sanciones correspondientes a los otros. Jiménez de Asúa, L., *Tratado de Derecho Penal*, 2a. ed., Tomo II, Buenos Aires, 1950, pág. 562 *et seq.;* Maggiore, *Derecho Penal*, Vol. II, Bogotá, 1954, pág. 160 *et seq.* Esta es la solución a que, por otros caminos, hemos llegado antes, con la diferencia de que el análisis civilista fortalece la norma de *González.*

Los derechos romanogermánicos han elaborado multitud de otras reglas para resolver otros difíciles problemas que plantea la teoría del concurso. Existen las reglas relativas

a la exclusividad, la alternatividad, la especialidad, la consunción, la homogeneidad, la heterogeneidad, la interferencia y la relación de tipos. Jiménez de Asúa, *supra*, pág. 542 *et seq.*; Maurach, *supra*, pág. 315 *et seq.*; Maggiore, *supra*, pág. 153 *et seq.*; Puig Peña, *supra*, pág. 306 *et seq.*; Cuello Calón, *Derecho Penal*, México, 1961, pág. 565 *et seq.* No es necesario en esta ocasión referirnos a ellas, pero su contribución no puede descartarse de suscitarse en otras situaciones la necesidad de examinar otros aspectos de la teoría del concurso.

Por las razones que anteceden modificaría la sentencia del Tribunal Superior para anular las condenas impuestas por los delitos de poseer y de transportar y ocultar marihuana, sosteniendo tan solo la pena impuesta por el delito de distribución.